**Page J. Thibodeaux, Appellee, v. Uptown Motors Corporation et al., Appellant.**

**Gen. No. 36,493.**

filed February 9, 1933.  Rehearing denied February 24, 1933.

BERNARD J. BROWN, for appellant.

HARRIS F. WILLIAMS and SYDNEY L. BLANKSTEIN, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by defendant from an order for a preliminary injunction issued November 3, 1932, upon

a verified and amended bill of complaint filed on the preceding day. The amended bill, as well as the order for injunction, shows an abuse of the English language which has been condemned without reservation repeatedly by the decisions of this court. *Preble v. Architectural Iron Workers' Union of Chicago,* 260 Ill. App. 435, and *Tarjan v. National Surety Co.,* 268 Ill. App. 232. The abuse referred to is the use of the symbol "and/or," to which in this case has been added the further abomination "was/were."

Purging the order from these abominations we translate it to mean that defendant is restrained and enjoined from occupying and using the premises commonly known as 4918–4920 Broadway, Chicago, Illinois, and from causing, permitting or allowing others to occupy and use these premises for any purpose other than that of the sale of automobiles, and particularly from permitting, allowing and encouraging various third persons to enter upon, occupy and use these premises for the purpose commonly known as "parking" of automobiles.

The facts as set forth in the amended bill in brief are that on March 24, 1932, complainant by an instrument which was partly printed and partly typewritten demised and leased to defendant corporation these particular premises described in the injunction order. The lease stated that the premises were "to be occupied for the sale of automobiles and for no other purpose whatever." The words "the sale of automobiles" were typewritten; the other words in the clause were in the printed form of the lease. Other provisions of the lease were that the term should commence on April 1, 1932, and expire on March 31, 1933.

The total rental reserved was $1,000, payable in monthly instalments of $100 each in advance for the first eight months and $50 in advance for the remaining four months of the term of the lease. By a typewritten rider attached it was provided that the lessee

was entitled to keep all its property and equipment on the land and that the lessor should have the right to cancel and terminate the lease at any time thereafter upon giving to the lessee a notice in writing 90 days prior to such cancellation.

The amended bill alleges that Balaban & Katz, S. C. Meyer and Edward F. Maher, their agents, servants, etc., are allowed to come on the premises for the purpose of using the same as and for what is commonly known as ''parking'' of automobiles, which practice (again translating into the English language) the bill avers, consists in permitting owners and drivers of automobiles to temporarily place or store the same upon the premises for varying periods of time as a convenience and for safekeeping; that these third persons have entered upon the premises with the consent of defendant lessee and are thus diverting the use of the premises from the purpose named in the lease.

The controlling question in the case is whether these allegations of fact as set forth in the amended bill were sufficient to authorize the granting of the temporary injunction.

Defendant points out that for aught that is alleged in the bill, the premises in question are vacant and says that we may take judicial notice of the fact that the selling of automobiles would properly include placing automobiles on the lot either with or without ''For Sale'' signs thereon. Defendant argues that there is no express covenant in the lease providing that the lot should not be used for parking purposes. Reliance is placed on the case of *Consolidated Coal Co. v. Schmisseur*, 135 Ill. 371, in which the Supreme Court said that the cases were rare in which a court of equity has interfered to prevent the breach of a negative covenant implied from a positive stipulation. Defendant points out that a distinction between an express negative covenant and an implied negative covenant

is in that in the latter class of cases equity proceeds to take jurisdiction only for the purpose of preventing irreparable injury, while in the case of an express negative covenant equity takes jurisdiction irrespective of whether complainant is injured or not. To this effect also are *Postal Tel. Co. v. Western Union Tel. Co.*, 155 Ill. 335, and *Schobert v. Pittsburgh Coal & Mining Co.*, 254 Ill. 474.

On the other hand, complainant relying on *First Trust & Savings Bank v. Economical Drug Co.*, 250 Ill. App. 112; *Steward v. Winters,* 4 Sanford Ch. Rep. 628, and other cases, contends that the phrase "and for no other purpose whatever" is an express negative covenant. Complainant says that a construction such as that for which defendant contends would practically require a dictionary to be attached to every such covenant in a lease in order to make it effective. He says that the *Economical Drug Co.* case, above cited, is "the leading case in the United States on this subject." An examination of that case discloses that the premises in question were demised to be used as a drugstore "with the right to sell candy, cigars and soft drinks, and for no other purpose whatsoever." There were, however, other paragraphs in the lease giving further light upon the intention of the parties. In particular, the 17th clause of the lease recited that John R. Thompson Company had the *exclusive* right to maintain a restaurant in the building and that the "lessee herein further covenants and agrees that it will not sell anything in the way of edibles on said premises that will in any way conflict with said exclusive right, and that it will do no cooking on said premises." As a matter of fact, the negative clause just above quoted was the clause which the bill in that case alleged was breached and concerning which the injunction was prayed. Moreover in that case (unlike this) the cause was heard upon the merits. It was not a case, as here, where a

preliminary injunction was granted upon the aver·ments of the bill.

There is, however, as we understand it, no controversy here that the lessor in demising his premises may by an express negative covenant which is unambiguous exclude the lessee from conducting on the premises any particular business other than that for which the premises are demised. That is a matter solely for the agreement of the parties, and equity will enforce such a clear, unequivocal and unambiguous express covenant, irrespective of whether damages are sustained, but any such covenant is construed strictly against the lessor. Where any particular use is excluded only by implication, damage must be averred and proved. Here the premises are demised for use in selling automobiles. Parking automobiles on the premises would not seem to be an inappropriate means to the purpose for which the premises are demised. A construction to the effect that parking is prohibited arises only by implication from the use of the phrase ''and for no other purpose whatever.'' The covenant does not expressly say that this means and includes parking, but complainant asks the court to imply it from the language of the lease and the trial court held that it was implied and therefore entered the injunction. Conceding that the language may be construed to have such meaning, complainant would not be entitled to this extraordinary remedy of an injunction without in fact alleging and proving damages. There is no such allegation or proof. Our decision does not turn on the construction of any particular clause of the lease but rather upon the fact that the amended bill fails to allege facts sufficient to show any general parking use of the premises. The amended bill alleges only that the named persons were permitted to have their automobiles on the premises.

Complainant appeals to the rule that an appellate court will not usually reverse where the only effect of

the injunction is to preserve the *status quo. McDougall Co. v. Woods,* 247 Ill. App. 170; *People v. Standidge,* 333 Ill. 361; *Levy v. Rosen,* 258 Ill. App. 262, are cited. These cases are not applicable. The averments of the bill show that the effect of this preliminary injunction is to destroy, not preserve, the status.

.Irrespective of what a full hearing may determine as to the merits, this preliminary injunction should not have been issued, and the order will therefore be reversed.

*Reversed.*

McSURELY, P. J., and O'CONNOR, J., concur.