COMPREHENSIVE ACCOUNTING SERVICE COMPANY, Plaintiff-Appellant, *v.* SAMUEL J. SHIFO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 79-2460

Opinion filed June 27, 1980.—Rehearing denied November 20, 1980.

Thomas A. Mass and Cary S. Fleisher, both of Mass, Miller & Josephson, of Chicago, for appellant.

Ash, Anos, Harris & Freedman, of Chicago (George J. Anos, Bruce T. Logan, and David P. O'Neill, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an interlocutory order requiring the return of certain accounts it had repossessed from defendants, and the sole issue presented concerns the propriety of that order.

It appears that plaintiff is in the business of obtaining clients for its accountant customers as well as providing those customers with various forms, training, electronic data processing services, and consultation in the marketing and management of an accounting practice. Between 1973 and 1978, defendant Shifo (an accountant) signed several installment notes payable to plaintiff for the purchase of various "accounts." (An account is described in the purchase agreement as "a contract right to payment not yet earned by performance of bookkeeping and related services, for a client, and the accounts receivable growing out of said right, together with the client's books and records, and the accountant's work papers, plus the intangible rights that flow from the existence of the account, such as future accounts that are obtained thereby.") The purchase agreement also provided that plaintiff would retain a security interest in the accounts to secure payment and that, in the event of default:

> "[T]he Seller, at its option, may declare all of the Obligations to be immediately due and payable, and then shall have the remedies of a secured party under the Uniform Commercial Code of Illinois, including, without limitation thereto, the right to take immediate and exclusive possession of the Accounts, and for that purpose the Seller may, so far as the Purchaser can give authority therefore [*sic*], enter upon any premises on which the Account may be situated, and remove the same therefrom, if this can be done without breach of the peace * * *."

Further, the installment notes contained a statement that "[a]ll present and future accounts shall stand as security for all present and future loans," and the financing statement filed with the Secretary of State described the collateral as "[a]ll contract and other rights, including the right to payments for services rendered to such accounts, to existing and after-acquired accounting clients and right to possession of clients' books and records and debtor's work product, as purchase money security interest for payment of debtor's obligations present and future."

Under this arrangement, a number of accounts were transferred to Shifo from June 1973 to January 1978. By 1979, however, Shifo had defaulted on the notes in the amount of $340,972.96. On October 24, 1979, plaintiff confessed judgment on the notes and, on October 29, it entered Shifo's offices and repossessed all of the account files and brought them to the offices of Russell Dusak, one of plaintiff's franchisees. A written agreement was then entered into on October 30 between plaintiff and Shifo, providing essentially that Shifo would be allowed to continue working on 30 to 40 "priority" accounts at Dusak's office; that Shifo would receive a salary of $3,600 per month from plaintiff in lieu of client billings; that Shifo would be allowed to remove the priority accounts from

Dusak's office when he (Shifo) made certain timely payments to plaintiff on the notes; and that ultimately plaintiff would return to Shifo the difference between the value of his practice and any amount of the debt remaining unpaid.

Also on October 30, plaintiff filed a "complaint for injunction in aid of repossession of property," alleging that it had a legitimate interest and property right to be protected in its service name and reputation in the community, the uniformity and quality of services rendered to clients in its debtor-creditor relationship with defendants, and in the need for information regarding the status of the practice entrusted to defendants; and that unless defendants are enjoined from servicing or otherwise interfering with the accounts repossessed by plaintiff, it will suffer immediate and irreparable harm to these interests and property rights. The complaint requested the issuance of a preliminary injunction as well as final injunctive relief. On October 31, plaintiff's motion for a temporary restraining order on the basis of the above allegations was granted.

Defendants' answer included an affirmative defense, asserting that plaintiff's repossession of the accounts was not sanctioned by any court and was a wrongful interference with defendants' client relationships; that Shifo would not be able to maintain an accounting practice without the records taken by plaintiff; and that Shifo's client relationships may be irreparably harmed. Defendants requested that the relief prayed for by plaintiff be denied; that preliminary and permanent injunctions issue restraining plaintiff from interfering with defendants' client relationships; and that defendants be granted leave to file a counterclaim. In its reply, plaintiff denied all pertinent allegations. Neither a counterclaim nor an order granting defendants leave to file one appear in the record.

During the course of the hearing on plaintiff's request for a preliminary injunction, the trial court asked Shifo to prepare a list of clients not purchased or procured from plaintiff and also asked plaintiff to review the list and "make ready to return to the defendant those items that you do not challenge, that is those items which you acknowledge are his, those customers which you acknowledge were neither bought nor paid for or agreed to pay for from your company." In response thereto, defendants presented a list of 63 clients and orally moved that the trial court find "the status quo between these parties was that date prior to October 29, 1979, when the officers and certain employees and agents of Comprehensive went in and cleaned out Sam Shifo's accounting office," and that plaintiff be required to "turn over to Sam Shifo these 63 accounts, all of the files in connection with these 63 accounts." Defendants stated that a written motion would be filed the next day, and the trial court immediately entertained arguments thereon, during which it was informed of the existence of the agreement whereby Shifo was to work at

Duṣak's office on 30 of the 63 repossessed accounts until he made certain payments on the outstanding debt. The trial court then orally ordered these 30 files to "be physically turned over to the defendant until at least this preliminary hearing is concluded or further order of Court, whichever comes first." On November 28, a written order to that effect was entered ·which also required Shifo to post a $5,000 bond. On November 29, defendants filed their written motion, entitled "motion for turn over order and restoration of status quo." An answer was filed thereto by plaintiff, who then moved to vacate the order. This appeal followed the denial of the motion to vacate.

OPINION

Initially, we note that although defendants do not contest the appealability of the trial court's order in their brief, when the question was raised at the oral arguments here, defendants asserted that the order was merely a nonappealable "interim" order entered by the court in the course of the proceedings; whereas, plaintiff argued that the order was a preliminary injunction and thus appealable under Supreme Court Rule 307 (Ill. Rev. Stat. 1977, ch. 110A, par. 307), which provides in pertinent part:

"(a) * * * An appeal may be taken to the Appellate Court from an interlocutory order of court

(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction."

We believe the order should be treated as a preliminary injunction. For example, in *Terry v. Terry* (1970), 121 Ill. App. 2d 331, 257 N.E.2d 520 (abstract), plaintiff on the first day of a divorce trial presented to the trial court an order directing defendant to turn over to the court clerk the stock, records, and books of a certain corporation. The order was entered without prior notice, petition, hearing or bond, and an interlocutory appeal was taken. In finding that the order came within Supreme Court Rule 307, this court noted that "the decretal order amounts to a mandatory injunction. The trial court was attempting to maintain the status quo pending the outcome of the divorce action." In *Halvorsen v. Richter* (1976), 37 Ill. App. 3d 344, 345 N.E.2d 220, plaintiff owned 37½% of the stock of a certain corporation and defendant owned 62½%. Plaintiff alleged that defendant had agreed to purchase plaintiff's shares for approximately $30,000 but breached the agreement by failing to tender the money. In a counterclaim, defendant alleged that he had not agreed to pay money for the stock but, rather, had agreed to assign certain contracts and convey certain equipment to plaintiff and that plaintiff breached this agreement by refusing a tender thereof. An order was then entered requiring defendant to turn over the stock certificates which were listed in

plaintiff's name on the corporate books, and this court, in considering the appealability of the order under Rule 307, stated that "[w]hile the order appealed from is clearly interlocutory it has been treated by both sides as being injunctive in nature and hence appealable under Supreme Court Rule 307." 37 Ill. App. 3d 344, 346, 345 N.E.2d 220, 222.

■■ In the instant case, the order in question directed that the 30 files be turned over to Shifo until the termination of the hearing on plaintiff's motion for preliminary injunction or until the further order of court. It thus appears to have been an attempt to restore the status quo, and we see it (as do the parties) as being clearly injunctive in nature. Further, inasmuch as the order directed the affirmative act of turning over the files to Shifo, it implies a direction that plaintiff was not to repossess the files and is properly viewed as a mandatory preliminary injunction, the grant of which is appealable under Supreme Court Rule 307.

■■ Turning then to the question of the propriety of the order, we note the requirements for the issuance of a preliminary injunction were clearly set forth in *Bromberg v. Whitler* (1978), 57 Ill. App. 3d 152, 155, 372 N.E.2d 837, 840, where the court stated:

> "For a preliminary injunction to issue, a plaintiff must establish (1) that he possesses a certain and clearly ascertained right which needs protection (*Schwalm Electronics, Inc. v. Electrical Products Corp.* (1973), 14 Ill. App. 3d 348, 302 N.E.2d 394); (2) that he will suffer irreparable injury without the protection of the injunction (*Knuppel v. Adams* (1973), 12 Ill. App. 3d 708, 298 N.E.2d 767); (3) that there is no adequate remedy at law for his injury (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252); and (4) that plaintiff is likely to be successful on the merits (*Kable Printing Co. v. Mount Morris Bookbinders Union Local No. 65—B* (1976), 63 Ill. 2d 514, 349 N.E.2d 36)."

(Also see *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73; *McErlean v. Harvey Area Community Organization* (1972), 9 Ill. App. 3d 527, 292 N.E.2d 479.) Furthermore, a preliminary mandatory injunction may issue only when the need for such relief is clearly established and free from doubt. (*S & F Corp. v. American Express Co.; Peckler v. Cullerton* (1968), 92 Ill. App. 2d 290, 236 N.E.2d 289.) Mandatory preliminary injunctions are not favored by the courts, and the only justification for such relief is to maintain the status quo where it is necessary to prevent irreparable injury. *S & F Corp. v. American Express Co.; Halvorsen v. Richter.*

■ Plaintiff first suggests that the injunction was erroneously entered because it did not preserve the status quo. We agree. The term "status quo" is defined as " 'the last, actual, peaceable, uncontested status which preceded the pending controversy.' " (*Grillo v. Sidney Wanzer & Sons,*

*Inc.* (1975), 26 Ill. App. 3d 1007, 1011, 326 N.E.2d 180, 183; *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 468, 262 N.E.2d 753, 757.) In the instant case, the status of the case before the "pending controversy"; *i.e.*, before plaintiff filed the instant suit, was that Dusak was in possession of the accounts. Further, it appears that this status was "actual, peaceable, and uncontested" inasmuch as it arose pursuant to the agreement between plaintiff and Shifo whereby the latter was allowed to work on the 30 accounts at Dusak's office until certain payments were made on the debt. Shifo did not contest the legality of this contract at the hearing on the motion, and we thus consider this arrangement to be the "status quo." The injunction entered disrupted rather than preserved that status quo, and it therefore was improper. See *Cook v. Fletcher* (1950), 341 Ill. App. 429, 94 N.E.2d 365 (abstract); *Thibodeaux v. Uptown Motors Corp.* (1933), 270 Ill. App. 191.

Plaintiff also contends that the injunction should not have been entered since defendants did not show it was necessary to prevent irreparable injury. In response, defendants argue in this court that such injury would have resulted had the order not been entered, because Shifo could not have operated his accounting business in a normal manner without his records; that his relationship with his clients would have been destroyed; and that he would have been deprived of his livelihood. We note, however, that no allegation of irreparable injury was included in defendant's original oral motion for an injunction, nor was any evidence of such presented at the hearing. Neither do we see how Shifo was otherwise threatened with irreparable injury, inasmuch as it appears that he was being paid a salary of $3,600 per month while working on the accounts at Dusak's office where he had full access to them. In light thereof, we conclude the record does not demonstrate a threat of irreparable injury warranting the issuance of a preliminary injunction.

For the reasons stated, the order of the trial court directing the 30 accounts to be returned to Shifo is reversed, and this cause is remanded for further proceedings consistent with the content of this opinion.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.