KENT W. SHODEEN, Plaintiff-Appellee, v. CHICAGO TITLE AND TRUST COMPANY, as Trustee, Defendant-Appellant (Collins Development Corporation, Defendant).

Second District   No. 2—87—0640

Opinion filed November 20, 1987.

David I. Herbst and Jodi I. Firfer, both of Portes, Sharp, Herbst & Kravets, Ltd., of Chicago, for appellants.

Robert S. Minetz, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Robert F. Casey, of Casey & Krippner, of Geneva, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Chicago Title & Trust Company (Chicago Title), as trustee under trust No. 1081582, appeals from the order of the circuit court which granted the motion of the plaintiff, Kent Shodeen, for a preliminary mandatory injunction ordering the defendant to convey 26 real estate lots to the plaintiff. On appeal, the defendant contends that the trial court erroneously granted this relief where: (1) the court order was, in effect, a decree of specific performance as well as a disruption of the status quo; (2) the plaintiff failed to present evidence that the circumstances necessitated such relief; and (3) the court based its decision to enter an injunction on improper considerations, namely, the possible damage incurred by individuals who had previously contracted to purchase homes from the plaintiff. For the reasons set forth below, we reverse.

The following facts form the basis of this appeal. On September 6, 1974, the Collins Development Corporation (Collins), as seller, and the

plaintiff, as buyer, entered into an installment contract for the sale of 126 acres of vacant land in St. Charles, Illinois, which was part of a proposed development to be known as Fox Chase. This contract, which stated that time was of the essence, provided that the plaintiff would make full payment of the purchase price on or before 10 years from the date that the St. Charles city council approved the preliminary development plan for Fox Chase. The contract further provided that the seller would be responsible for several on-site costs such as engineering and utilities as well as the off-site costs of water and sewer connections. In addition, paragraph 20 of the installment contract stated, in part:

"Seller further agrees to construct a new boulevard (Fox Chase Boulevard) along the North and West sides of Buyers subject property at no expense to the Buyer."

Paragraph 23 of the contract contained a notice provision which provided:

"In the event Buyer shall fail to make any of the payments required herein *** and provided such failure is not cured or remedied within ninety (90) days after the receipt by Buyer of a written notice from Seller describing said failure, then this Agreement shall be forfeited at the option of Seller, and all sums heretofore paid shall be retained *** by the Seller."

In 1982, Collins experienced financial difficulties and transferred the property which had not already been conveyed under the installment contract to the defendant, Chicago Title, as trustee pursuant to a settlement agreement between Collins, Continental Bank and others. Thereafter, on December 17, 1984, the city council of St. Charles passed a resolution stating that the preliminary plan entitled "Preliminary Plan, Unit 1 of Hunters Field" was approved subject to the following condition:

"4. Concurrent with the submittal of any Final Engineering Plans and Final Plat for Phases 3 or 4 (as shown on the plan received November 9, 1984), developer shall submit plans for the construction of Fox Chase Boulevard for approval, subject to the codes and regulations of the City. No final plat for Phase 3 or 4 shall be approved until the design, location, or construction planning of Fox Chase Boulevard are approved by the City."

After the transfer of ownership to Chicago Title, the plaintiff and Chicago Title amended the original installment contract four times by extending its completion date to May 15, 1987. During the pendency of the agreement between the plaintiff and Collins, as well as thereaf-

ter between the plaintiff and Chicago Title, the plaintiff paid a unit price per lot and the then seller conveyed the individual lots. Through May 28, 1987, the plaintiff had paid over $1.6 million to either Collins or Chicago Title for 273 lot purchases. This amounted to 60% of the total contract. During the 13-year pendency of this installment contract, it was not uncommon for the plaintiff to contract with third-party purchasers for the construction of houses on lots prior to his actually paying the lot price and having the lot conveyed to him.

During the time from February 7 to April 27, 1987, the plaintiff entered into 23 contracts for the sale of individual lots in Fox Chase. He also possessed deposits from three other prospective purchasers. The plaintiff scheduled closing dates for these lots to commence on June 16, 1987, and to continue until November 16, 1987. Each of these lots was owned by Chicago Title and was subject to the installment agreement.

On May 15, 1987, the plaintiff filed a complaint for injunctive and other relief. On May 29, 1987, plaintiff filed a four-count amended complaint and motion for preliminary injunction wherein he requested, *inter alia*, the entry of a "preliminary injunction requiring Chicago Title to provide Shodeen with Trustee's Deeds in accordance with the past practices of the parties upon payment of the lot prepayment fee to the Clerk of the Court."

The complaint maintained, in substance, that the failure of Collins and Chicago Title to complete construction of the utility lines and the new boulevard described in paragraph 20 of the contract had resulted in a breach of that contract and had adversely affected the development of the real estate, since St. Charles would not permit further development until the new boulevard was constructed and the peripheral utilities were provided. The complaint also alleged that the final payment of the balance of the purchase price due on May 15, 1987, was less than the cost to complete the construction described in paragraph 20, and, although pursuant to paragraph 23 Chicago Title has the right to serve notice should the plaintiff fail to make any of the payments required by the contract, Chicago Title had not served the plaintiff with any notice of default. In this regard the plaintiff requested an order which barred Chicago Title from serving the plaintiff with any notice of default. The complaint also requested a mandatory injunction requiring the defendant to perform the obligations set forth in paragraph 20 and to convey the remainder of the real estate to the plaintiff, as well as a judicial declaration that Chicago Title had a duty under the contract to construct the utility lines and the road, and also that its anticipatory breach of the contract released the

plaintiff from any additional performance. Finally the plaintiff requested damages from Chicago Title for breach of contract in excess of $8 million plus costs and fees.

On June 11 and 13, 1987, the court held an evidentiary hearing on the plaintiff's motion for injunctive relief. At this hearing, Collins testified that it was now insolvent and had no assets to fulfill any of the seller's responsibilities under the original agreement. On direct examination, the plaintiff then described the development plan for Fox Chase and testified that Chicago Title had not installed the utilities or the boulevard pursuant to the contract. He also stated that there had been an adverse effect on the value of the remaining lots as a result of Chicago Title's failure to install utilities and complete Fox Chase Boulevard. The plaintiff also stated that the cost to complete the boulevard was more than the balance owed for the property under the installment contract. He also stated that the property which was intended to be Fox Chase Boulevard was not part of the property he was purchasing under the contract.

The director of city planning of St. Charles testified to the substance of the city council's resolution. He also stated that ordinarily when a developer puts in a subdivision, the developer and/or landowner completes an application for the roadway which includes its location, size, and capacity.

On cross-examination, the plaintiff stated that at the time the parties had signed the most current extension in March 1987, he had already signed contracts to build homes for third-party purchasers. He also stated that he had taken no action towards the completion of Fox Chase Boulevard, since pursuant to the contract he did not consider it his responsibility. Indeed, in his opinion, Chicago Title owned the property. He acknowledged that if the court failed to direct Chicago Title to relinquish the deeds, he would be in breach of all the contracts with his customers. Furthermore, with regard to count IV of his complaint for damages the plaintiff stated that $8 million would make him whole.

On June 13, 1987, the court issued an order for a preliminary injunction which ordered Chicago Title to execute and deliver trustee deeds to the 26 lots under the existing contract upon the plaintiff's depositing $7,200 per lot in an interest-bearing account. In deciding to enter the injunction with respect to those 26 lots, the court stated that the public interest was of particular concern in this case, as well as the number of homeowners who would be left "hanging in the winds" and the multiplicity of lawsuits if the injunction failed to issue. The court denied the plaintiff's request for an injunction for the con-

veyance of the balance of the real estate. The defendant then filed this timely appeal.

The sole issue in this appeal concerns the propriety of the trial court's decision to order Chicago Title to relinquish the 26 lots in question. In this regard defendant Chicago Title sets forth three arguments. First, it argues that the trial court's order failed to preserve the status quo in that the trial court's grant of relief was not preliminary, but rather afforded the plaintiff the ultimate relief he would have received if successful after a full trial on the merits in a suit for specific performance. The defendant next argues that the plaintiff failed to establish any of the necessary elements for the issuance of injunctive relief. Finally, the defendant argues that the trial court incorrectly based the entry of the mandatory injunction on the harm to the public interest, specifically possible damages to the plaintiff's customers. In this regard, the defendant contends that under the facts of this case, the public interest does not outweigh the equities of Chicago Title and, therefore, the trial court abused its discretion when it applied the public interest test in the plaintiff's favor.

In response, the plaintiff maintains that the trial court properly granted his motion for a mandatory preliminary injunction as he had no adequate remedy at law and would have suffered irreparable injury if he could not have conveyed title to the 26 third-party *bona fide* purchasers of homes. Furthermore, he asserts that the trial court's decision ordering the defendant to convey the 26 lots did not alter the status quo or divest Chicago Title of the lots; rather, it merely required the defendant to act in accordance with the parties' past practices of conveying lots after construction had already begun. Finally, the plaintiff maintains that it is the trial court's duty to order equitable relief so as to avoid a multitude of lawsuits.

■■ ■ The purpose of a preliminary injunction is to "preserve the status quo until the case can be decided on the merits. [Citations.]" (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382.) Thus, its objective "is not to determine controverted rights or to decide controverted facts or the merits of the case." (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.) In order to establish entitlement to preliminary injunctive relief, the plaintiff must demonstrate "(1) that he possesses a clearly ascertained right which needs protection, (2) that he will suffer irreparable harm without the injunction, (3) that there is no adequate remedy at law for his injury, and (4) that he is likely to be successful on the merits of his action." (*Levitt Homes, Inc. v. Old Farm Homeowners' Association* (1982), 111 Ill. App. 3d 300, 307.) Once the plaintiff establishes this,

the court must also balance the equities to determine the relative inconvenience to the parties and whether the burden upon the defendant, should the injunction issue, outweighs the burden to the plaintiff by denying it. (*In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 354.) The granting or denial of a preliminary injunction is within the trial court's broad discretionary powers, and appellate review of the court's order is limited to a determination of whether the court abused its discretion in the allowance or refusal of the injunction. *American National Bank & Trust Co. v. Chicago Title & Trust Co.* (1985), 134 Ill. App. 3d 772, 776-77.

■■ ■ In the present action, the trial court's order directed Chicago Title to convey the 26 deeds at issue. Such an order is clearly mandatory in nature. Courts do not favor mandatory preliminary injunctions, and such relief is justified only so as to maintain the status quo to avoid irreparable harm. (*Kessler v. Continental Casualty Co.* (1985), 132 Ill. App. 3d 540, 545.) Indeed, courts view the need to impose mandatory injunctions with a fair amount of skepticism, especially in those cases when the court is required to make this drastic use of its authority preliminarily. (*Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 151.) A preliminary mandatory injunction is an extraordinary remedy, not a matter of right, and the courts may grant such relief only when the necessity for such relief is clearly established and free from doubt. 130 Ill. App. 3d at 151.

In the present case the trial court's order recited: (1) that the plaintiff had established a certain and clearly ascertainable right in the subject real estate contract which needed protection; (2) irreparable injury would occur if no injunction was issued as the plaintiff would be in potential breach of contract with the purchasers of the homes constructed on the real estate and, thus, the rights of innocent purchasers would be prejudiced; and (3) the plaintiff does not have an adequate remedy at law because money damages against the defendant, Chicago Title, a land trust, or Collins, an insolvent corporation, would not solve the immediate problem. In addition, the trial court concluded that the plaintiff had established a likelihood of success on the merits and the equities of this case favored the entry of injunctive relief. We conclude, however, that the averments of irreparable harm are not sufficient to justify the trial court's entry of a preliminary mandatory injunction.

■■ "[I]rreparable harm occurs only where the remedy at law is inadequate; that is, where monetary damages cannot adequately compensate the injury, or the injury cannot be measured by pecuniary

standards." (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 834, 458 N.E.2d 998, 1001.) A preliminary injunction should not be granted where damages caused by alteration of the status quo pending a final decision on the merits can be compensated adequately by monetary damages calculable with a reasonable degree of certainty. *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 835.

■ In the present case the plaintiff's position that he has no adequate legal remedy is belied by his testimony at the evidentiary hearing wherein he stated that any losses he might sustain as a result of the failure of Chicago Title to convey the 26 lots were not only compensable in damages, but were capable of exact computation. Indeed, count IV of the amended complaint seeks an amount in excess of $8 million. On cross-examination, the plaintiff explained how he computed the elements of his alleged damages, explained how he would prove them in trial and admitted that a judgment in his favor in that amount would make him whole. (See, *e.g., Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 835. But see, *e.g., Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 411 (loss of customers and sales and the threat of the continuation of such losses to a legitimate business interest are sufficient to show that the business will suffer irreparable injury, with no adequate remedy at law, unless protected by the court).) The injury the plaintiff complains of, breach of contract, is capable of being measured and corrected by an award of money damages, and, therefore, the plaintiff's remedy at law is clearly adequate. *Ajax Engineering Corp. v. Sentry Insurance* (1986), 143 Ill. App. 3d 81, 84.

In the present case the trial judge maintained that innocent home purchasers would be left "hanging in the winds" and the plaintiff would be in potential breach of contract, causing irreparable harm, if he failed to issue the injunction ordering Chicago Title to convey the lots. In this regard the court stated it based its decision on the court's discussion in *Roland Machinery Co. v. Dresser Industries, Inc.* (7th Cir. 1984), 749 F.2d 380. In that case the court opined that when an order granting or denying a preliminary injunction has consequences beyond the immediate parties, those interests—the "public interest"—must be reckoned into the weighing process. *Roland Machinery Co. v. Dresser Industries, Inc.* (7th Cir. 1984), 749 F.2d 380, 388.

■ ■ The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of the cause in order to maintain the last uncontested status which preceded the controversy. (*Schnepper v. American Information Technologies, Inc.* (1985), 136 Ill.

App. 3d 678, 680.) In our opinion the status quo which should have been preserved was the ownership of the lots by Chicago Title. Indeed, the trial court could have entered a preliminary injunction against Chicago Title enjoining it from conveying the lots to third parties until the case was decided on the merits. A traditional order of that type would have preserved the plaintiff's claim to the property and that of the homeowners and would have also preserved Chicago Title's right to a full hearing on the merits after the opportunity to conduct discovery. In our opinion, the trial court's summary divestiture of Chicago Title of the 26 lots denied Chicago Title the opportunity to litigate the matter and, in effect, afforded the plaintiff a grant of specific performance.

■■ ■ In support of affirmance the plaintiff argues that the trial court's order in effect attempted to avoid the multiplicity of litigation which would have resulted from the home purchasers who would sue the plaintiff for breach of contract. However, there is no indication in the record that multiple lawsuits were either threatened or filed. Indeed, none of the home purchasers were ever before the trial court. Mere speculation of the possibility of multiple lawsuits is not a sufficient basis for granting extraordinary injunctive relief. (*Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1978), 59 Ill. App. 3d 206.) A legal remedy will be adequate where it is clear, complete, and is as practical and efficient in achieving a prompt administration of justice as the equitable remedy. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 314.) In the present case it is our opinion that the trial court acted sympathetically, but, in view of legal precedent, prematurely.

Accordingly, for the reasons set forth above, the judgment of the circuit court is reversed.

Reversed.

NASH and INGLIS, JJ., concur.