ANTHONY R. GOLD *et al.*, Plaintiffs-Appellees, v. ZIFF COMMUNICATIONS COMPANY, d/b/a Ziff-Davis Publishing Company, Defendant-Appellant.

First District (2nd Division) No. 1—89—0082

Opinion filed September 26, 1989.

Francis J. Higgins, John J. Verscaj, and Kenneth E. Rechtoris, all of Bell, Boyd & Lloyd, of Chicago, for appellant.

Dan K. Webb and Calvin Sawyier, both of Winston & Strawn, of Chicago, for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Defendant, Ziff Communications Company, doing business as Ziff-Davis Publishing Company, appeals the circuit court's grant of a preliminary injunction requiring it to accept the reduced rate advertisements of plaintiff, PC Brand, Inc. (PC Brand). The issues presented are whether the circuit court erred in: (1) granting a mandatory preliminary injunction; (2) finding that plaintiffs would suffer irreparable harm in the absence of a preliminary injunction; and (3) granting the preliminary injunction despite the contention that plaintiffs failed to show that their threatened harm outweighed defendant's actual harm.

Defendant publishes, among other magazines, PC Magazine, PC Tech Journal, and PC Week (collectively, PC Publications). PC Magazine is a publication targeted at individuals and entities generally interested in, or in the market for, computer hardware and software products.

Plaintiff Anthony R. Gold (Gold) founded PC Magazine in October 1981. In November 1982, the corporate predecessor of defendant entered into various agreements with Gold whereby defendant obtained ownership and control from Gold of the corporation that owned PC Magazine. As consideration for the sale, Gold received a cash down payment, the right to installment payments tied to revenue, and the right to purchase a defined number of advertising pages in PC Magazine at a reduced percentage of the advertising fee published by defendant on its "rate cards," *i.e.*, the rates at which defendant of-

fered to sell advertising space to advertisers generally.

On September 15, 1986, defendant and Gold entered into an amended agreement, which restated and superseded the original agreement concerning reduced advertising fees. The amended agreement provided that through December 31, 1992, Gold was permitted to purchase a limited amount of advertising space in defendant's PC Publications, equal to the average number of ad pages used by each of the four largest advertisers in the preceding six issues, at a reduced rate that is 23.5% of defendant's "then current rate card" fees. The amended agreement contained no specific provision concerning the page placement of advertisements purchased by Gold; however, the practice was that Gold was given prime space position, in the first part of the magazine, similar to the space provisions given to PC Magazine's four largest advertisers.

The amended agreement further provided that Gold could use the advertising pages personally or "by a company which Gold control[led] (that is, in which [Gold] own[ed] at least 51% of the voting stock)," but this right could not be assigned, transferred or allocated to any other person or entity.

In January 1988, Gold and Stephen Dukker (Dukker) formed PC Brand, which was in the business of selling clone IBM personal computers by mail. Gold was the owner of 90% of the outstanding shares of PC Brand, while Dukker held the remaining 10% interest. Various interrelated agreements were entered into between Gold, Dukker, and PC Brand, including an "Assignment of Advertising Rights Agreement" in which Gold assigned the right to reduced advertising fees in PC Magazine to PC Brand. That agreement further provided that if PC Brand profited financially, those corporate monies saved from the discount rate, with a 25% pretax net income cap, would be paid to Gold.

In May 1988, PC Brand became operational and commenced placing advertisements in PC Publications at the reduced rate. In approximately August or September 1988, defendant first obtained copies of the assignment of advertising rights agreement; the shareholder agreement of Gold, Dukker and PC Brand; and the employment agreement between Dukker and PC Brand. After analysis of the agreements, defendant concluded that Gold possessed nominal, but not real, ownership of 90% of PC Brand's voting stock and that Dukker was vested with actual voting control of the company. Reasoning that Gold did not really own at least 51% of the voting stock of PC Brand and that Gold's rights to reduced advertising rates under the amended agreement were nonassignable "personal rights,"

defendant concluded that PC Brand was not entitled to the reduced advertising rates. On November 8, 1988, defendant notified Gold and PC Brand, by letter, of its conclusions and its intent not to honor the advertising rights under the amended agreement.

On December 6, 1988, plaintiffs filed an action for declaratory judgment, injunction, and damages. On the same date, notice of a hearing on plaintiffs' motion for a temporary restraining order and preliminary injunction was given to defendant. On December 9, 1988, plaintiffs filed their motion for a temporary restraining order and preliminary injunction, including Gold's affidavit; defendant filed a verified answer, denying the allegations of the complaint, and a counterclaim; and a hearing was held. The primary issue was whether plaintiffs would suffer irreparable harm if defendant did not continue to advertise plaintiffs' products in PC Magazine. Defendant did not contest the issue of whether plaintiffs were likely to succeed on the merits.

At the hearing, Dukker testified that PC Brand had been formed to take advantage of the discounted advertising rate and that the operation of PC Brand was structured around the advertising discount which Gold obtained. Dukker testified that PC Brand's pricing, personnel, service, and credit standing were dependent upon its ability, as a new mail order house for PC computerware, to run multipage ads in PC Magazine. According to Dukker, PC Brand, so structured and operated, could be successful even though it was then operating at a loss. Cross-examination of Dukker developed specific book account figures of PC Brand's monthly sales and profits.

Pointing out that the difference between the full and discounted rate was $42,000 per issue, or $84,000 per month, Dukker testified that PC Brand would probably be forced out of business were it not able to advertise at the discount rate for even one month, in the only magazine of any consequence in the personal computer field. He testified that there was a "significant possibility" that he would leave PC Brand if the company was required to pay the full rate card rate and that his expertise would then be lost to PC Brand.

The affidavit of Gold, which was corroborative of Dukker's testimony, was admitted into evidence at the hearing on the preliminary injunction. Both Gold and Malcolm Morris, vice-president and deputy general counsel for defendant, were present in court during the entire hearing, but neither was called to testify. At oral argument, counsel for PC Brand pointed out that all the financial records and contracts affecting PC Brand had been brought to court on the hearing date so that they were available to defendant for cross-examination purposes.

At the conclusion of the hearing, the circuit court entered a preliminary injunction in favor of plaintiffs and enjoined defendant from refusing to run PC Brand's advertisements in PC Magazine at the reduced rate provided in the amended agreement. The court held that irreparable injury to plaintiff was likely and therefore a preliminary injunction should issue to maintain the status quo. Counsel for the parties then agreed that they would draft and agree on the form of the order, which would then be presented to the circuit court.

The order, entered December 13, 1988, embodied what both parties accepted as a reasonable description of the advertisements which PC Brand had been allowed to run at a discount up until the time of the disagreement. The order required defendant to run "six consecutive four-color page ads organized as three consecutive two-page spreads to start on a left hand page beginning no farther back than page 222 the beginning of said ads to start on an average of page 185." No cash bond was required, but, in lieu thereof, the order, incorporating the suggestion from defendant's counsel made at the hearing, granted defendant a lien on any amounts which might become payable to Gold under his agreements with Dukker and PC Brand. No such amounts were payable for the fiscal year ending December 31, 1988, and, according to Dukker's testimony, none will become payable until April 1990 at the earliest.

On January 12, 1989, defendant appealed to this court, arguing that the circuit court abused its discretion in granting the preliminary injunction. For the following reasons, we affirm.

## I

Defendant first asserts that the circuit court abused its discretion in ordering a "mandatory" preliminary injunction.

■■■ The issuance or denial of a preliminary injunction is within the trial court's sound discretion, and its findings will not be disturbed unless they are against the manifest weight of the evidence. *The Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 891, 480 N.E.2d 1273, citing *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 217-18, 363 N.E.2d 6.

The purpose of a preliminary injunction is to "preserve the status quo until the case can be decided on the merits. [Citations.]" (*Prentice Medical Corp. v. Todd* (1986), 145 Ill. App. 3d 692, 697, 495 N.E.2d 1044, quoting *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382, 483 N.E.2d 1271.) A preliminary injunction is an extraordinary remedy which should be granted only pursuant to the utmost care and should not issue unless the need is clear. *Donald*

*McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 291, 389 N.E.2d 1300; *Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338, 344, 290 N.E.2d 701.

In order to establish entitlement to preliminary injunctive relief, the plaintiff must demonstrate:

> "(1) that he possesses a clearly ascertained right which needs protection, (2) that he will suffer irreparable harm without the injunction, (3) that there is no adequate remedy at law for his injury, and (4) that he is likely to be successful on the merits of his action." (*Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 672, 515 N.E.2d 1339, citing *Levitt Homes, Inc. v. Old Farm Homeowners' Association* (1982), 111 Ill. App. 3d 300, 307, 444 N.E.2d 194.)

Once the plaintiff establishes these elements, absent a clear showing that the trial court abused its discretion, the circuit court order cannot be overturned. *Sports Unlimited, Inc. v. Scotch & Sirloin, Inc.* (1978), 58 Ill. App. 3d 579, 584, 374 N.E.2d 916, citing *Shaper v. Roettger* (1976), 36 Ill. App. 3d 452, 343 N.E.2d 694.

■ A preliminary injunction does not anticipate or depend upon the ultimate conclusion to be reached upon the rights involved in the litigation. (*Rosinia v. Gusmano* (1980), 90 Ill. App. 3d 882, 886, 414 N.E.2d 1253.) The granting of a preliminary injunction shows only that a sufficient case has been presented to preserve the property or rights in issue in status quo until a final hearing upon the merits can be held. (*Kaplan v. Kaplan* (1981), 98 Ill. App. 3d 136, 141, 423 N.E.2d 1253.) The term "status quo" is defined as "the last, actual, peaceable, uncontested status which preceded the pending controversy." *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011, 326 N.E.2d 180; *Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 672, 515 N.E.2d 1339.

■ In general, a mandatory preliminary injunction (or specific performance) is not favored by the courts and the only justification for such relief is to maintain the status quo where necessary to prevent irreparable injury. (*Halvorsen v. Richter* (1976), 37 Ill. App. 3d 344, 345 N.E.2d 220.) A mandatory injunction should not be issued when it would not preserve the status quo, but would instead alter it. (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.) Because there is sound judicial skepticism concerning the need for a mandatory injunction, the court must find that there exists "great necessity" and the need for such relief must be free from doubt to justify it. *Ambassador Foods Corp. v. Montgomery Ward & Co.* (1963), 43 Ill. App. 2d 100, 105, 192 N.E.2d 572.

■ Defendant's argument against the grant of a mandatory injunction in this case is unpersuasive. A preliminary injunction, even if mandatory, is justified if necessary to maintain the status quo and prevent irreparable harm. (*Comprehensive Accounting Service Co. v. Shifo* (1980), 89 Ill. App. 3d 834, 838-39, 412 N.E.2d 556.) Usually the status quo is maintained by keeping everything at rest and in its present condition. Sometimes, however, the status quo is not a condition of rest but of action because the condition of rest is exactly what will inflict irreparable injury upon complainant. *Scholz v. Barbee* (1951), 344 Ill. App. 630, 637-38, 101 N.E.2d 845.

Defendant cites numerous cases in support of its argument that because, in this case, defendant was ordered to perform a specific action, a mandatory injunction was improperly imposed by the circuit court. However, none of the cases cited by defendant involved existing contracts to which the parties were adhering at the time of the controversy. Indeed, in some cases cited by defendant, no contract existed between the parties, and yet the trial court ordered the parties to act, which resulted in the wrongful granting of a mandatory injunction. In those cases, the reviewing courts emphasized that courts are not empowered to order anything beyond the maintenance of the status quo. (See, *e.g.*, *Ambassador Foods Corp. v. Montgomery Ward & Co.*, 43 Ill. App. 2d 100, 192 N.E.2d 572; *Amber Automotive, Inc. v. Illinois Bell Telephone Co.* (1973), 15 Ill. App. 3d 769, 305 N.E.2d 270; *S & F Corp. v. American Express Co.*, 60 Ill. App. 3d 824, 377 N.E.2d 73.) In this case, however, plaintiff seeks merely a continuation of the contract between Gold and defendant, not a creation of a new contractual relationship.

Here, the status of the case, before the present controversy, was that PC Brand was permitted to advertise in PC Magazine, in the manner and for the price set forth by the amended agreement. This status was actual, peaceable, and uncontested since it arose from the agreement between Gold and defendant. Moreover, PC Brand advertisements in PC Magazine had not ceased at the time of the controversy, and in fact, layouts for future advertising were set for at least two months ahead. Therefore, the circuit court neither reinstated a lapsed contract nor created a new one. It merely required that, to preserve the status quo until the case is resolved on its merits, PC Brand's current practice of advertising in PC Magazine was to continue. We conclude that the action by the circuit court was proper.

## II

Next, defendant contends that plaintiffs failed to prove that they

would suffer irreparable harm in the absence of a preliminary injunction.

■ It is a movant's burden to establish each of the necessary elements for the issuance of injunctive relief. (*Lake Shore Club v. Lakefront Realty Corp.* (1979), 79 Ill. App. 3d 918, 927, 398 N.E.2d 893; *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc.* (7th Cir. 1976), 545 F.2d 1096, 1097.) When defendant files a verified answer denying material allegations of the complaint, a preliminary injunction may not issue on the pleadings, but a hearing on factual matters must be conducted and evidence must be taken before the injunction may issue. *Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 551, 308 N.E.2d 313; *Centennial Laundry Co. v. West Side Organization* (1965), 55 Ill. App. 2d 406, 414, 204 N.E.2d 589.

In this case, a full hearing was held. However, defendant maintains that the circuit court erred in granting a preliminary injunction based on mere speculation about future harm. (*Allstate Amusement Co. of Illinois, Inc. v. Pasinato* (1981), 96 Ill. App. 3d 306, 309, 421 N.E.2d 374.) Relying principally upon New York cases, defendant argues that the oral testimony did not establish that plaintiffs would suffer irreparable harm absent concrete proof and financial data showing that the possibility of harm was more than mere speculation. *USA Network v. Jones Intercable, Inc.* (S.D.N.Y. 1989), 704 F. Supp. 488; *Benjamin Kurzban & Son, Inc. v. Board of Education* (1987), 129 A.D.2d 756, 514 N.Y.S.2d 749.

■ However, in the instant case, a hearing concerning the issue of irreparable harm, during which the merits of the case were specifically not addressed pursuant to the agreement of the parties, was held. During the hearing, Dukker testified regarding the financial status of PC Brand. Defendant was afforded opportunity to cross-examine Dukker and to present evidence contradicting Dukker and Gold; it provided no contradictory evidence. Where evidence is uncontradicted and is not inherently unbelievable, a finding contrary to that evidence cannot stand. (*Kelly v. Jones* (1919), 290 Ill. 375, 378, 125 N.E. 334.) Disbelief of oral testimony cannot support an affirmative finding that the reverse of that testimony is true, that is, it cannot supply a want of proof. *Bankers Life & Casualty Co. v. Guarantee Reserve Life Insurance Co.* (7th Cir. 1966), 365 F.2d 28, 34, citing *Moore v. Chesapeake & Ohio Ry. Co.* (1951), 340 U.S. 573, 576, 95 L. Ed. 547, 550, 71 S. Ct. 428, 430.

Defendant cites *American Brands, Inc. v. Playgirl, Inc.* (2d Cir. 1974), 498 F.2d 947, arguing that it is analogous to the instant case and that the circuit court here should have denied the preliminary in-

junction based on a lack of evidence of irreparable harm. In that case, the plaintiff sought a continuation of an advertisement on the back page of the defendant's magazine. The Second Circuit affirmed the trial court's denial of injunctive relief because plaintiffs did not show that *Playgirl* was in fact unique, that other markets were not available, and that absent the issuance of a preliminary injunction, plaintiffs would suffer irreparable harm. *American Brands, Inc. v. Playgirl, Inc.*, 498 F.2d at 950.

However, *American Brands* is clearly distinguishable from this case. PC Brand is a much smaller company than American Brands, Inc., a tobacco company, and its target market is more limited. PC Brand is a mail order computer company, whose only clients come from its magazine advertisements, which include mail and telephone order forms. In contrast, American Brands, Inc.'s advertising targets are much more diverse. Moreover, the tobacco company was not structured around an advertising and discount scheme as was PC Brand, and it would not have suffered irreparable injury nor been put out of business due to the absence of one advertising vehicle. See *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (absent clear financial data, the court could not draw an inference that USA Network, a nationwide company, would cease to operate merely because a small local cable company terminated its contract).

■ A demonstration of irreparable harm is related to the proof of a legitimate business interest. (*Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 722, 516 N.E.2d 915.) The failure of plaintiff to show an actual loss is not dispositive of the issue of whether a preliminary injunction is appropriate. The court must look to the entire record to determine if irreparable harm would occur absent a preliminary injunction. (*Associates for Oral Surgery, Ltd. v. Associates for Oral & Maxillofacial Surgery, Ltd.* (1976), 39 Ill. App. 3d 73, 77, 350 N.E.2d 109.) The loss of customers and sales and the threat of continuation of such losses to a legitimate business interest, as alleged by plaintiff here, is sufficient to show that plaintiff will suffer irreparable injury unless protected. (See, *e.g., Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 411, 474 N.E.2d 444, *cert. denied* (1985), 474 U.S. 920, 88 L. Ed. 2d 257, 106 S. Ct. 249; *U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187; *Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 372 N.E.2d 125.) While immediate damages in loss of sales may be calculable, the potential loss of future business is incapable of adequate computation (*U-Haul Co. v. Hindahl*, 90 Ill. App. 3d 572, 413 N.E.2d 187), and a preliminary injunction may be granted when it is difficult to quantify the damages

caused by the loss of future customers and revenues. *Eagle Books v. Jones*, 130 Ill. App. 3d 407, 411, 474 N.E.2d 444, *cert. denied* (1985), 474 U.S. 920, 88 L. Ed. 2d 257, 106 S. Ct. 249.

■■ The foregoing standards were applied by the circuit court when it determined that, for purposes of preliminary injunctive relief, irreparable harm does not have to be devastating harm, or harm that is beyond repair, or even harm in which the injury is great. As the circuit court noted, harm sufficient to justify issuance of a preliminary injunction is harm that would have such an effect that no redress or compensation can be had at law. (*Sports Unlimited, Inc. v. Scotch & Sirloin, Inc.* (1978), 58 Ill. App. 3d 579, 583, 374 N.E.2d 916; *General Electric Co. v. Local 997* (1955), 8 Ill. App. 2d 154, 164, 130 N.E.2d 758.) Action by a party which will ultimately result in putting another party out of business constitutes irreparable harm which justifies a preliminary injunction. *Machlett Laboratories v. Techny Industries* (7th Cir. 1981), 665 F.2d 795, 798.

The circuit court determined that PC Brand would cease to operate if it were not able to continue advertising in PC Magazine and that there was more than mere speculation (*Allstate Amusement Co. of Illinois, Inc. v. Pasinato* (1981), 96 Ill. App. 3d 306, 309, 421 N.E.2d 374) that plaintiffs would suffer irreparable injury were they not afforded the advertising privileges under the contract. Since the contract between defendant and Gold allowed a company in which Gold owned at least 51% of the voting stock to advertise at the reduced rate and since there was evidence that Gold owned 90% of the voting stock of PC Brand, the findings of the circuit court were justified.

Based on the financial information provided and the testimony before it, the circuit court held that PC Brand's loss of business was highly likely, that it would dissolve were it not able to advertise in the manner contemplated in its very structure, that the harm caused would be irreparable, and that no remedy at law could cure the effects of a denial of the injunction. It was not improper for the court to conclude from the evidence, despite the absence of spread sheets "or concrete data," that PC Brand would suffer irreparable harm. The circuit court's holding will not be reversed since it is not palpably contrary to the manifest weight of the evidence. *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 356-57, 228 N.E.2d 742.

### III

■■ Finally, defendant argues that the circuit court abused its discretion in failing to balance the equities, because the threat of

harm to plaintiffs is outweighed by the "substantial *actual* harm which will be suffered by defendant as a result of the mandatory injunction" and because the lien provided on any payments of PC Brand to Gold is totally inadequate security for defendant's losses.

We disagree. A consideration of whether the burden upon the defendant outweighs the benefit to the plaintiff in the issuance of an injunction is "inapplicable where defendant's actions were done with full knowledge of the plaintiff's rights and with an understanding of the consequences which might ensue." (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 682, 379 N.E.2d 1228.) Here, defendant agreed that Gold could establish other entities and still receive the benefit of the bargained-for contract. Defendant knew that Gold might set up corporate entities to take advantage of the advertising discounts, and in fact, PC Brand was structured so as to take advantage of the reduced advertising rate. Therefore, a balancing of the equities in this case is not supportive of defendant's contentions.

 Regarding defendant's assertion that the circuit court erred in imposing a lien under the preliminary injunction without adequate security, the very requirement of bond is within the discretion of the circuit court. (*Scholz v. Barbee* (1951), 344 Ill. App. 630, 641-42, 101 N.E.2d 845.) When imposition of bond would be an undue hardship on plaintiff in a preliminary injunction, it is not an abuse of discretion not to order the imposition of bond. (See Ill. Rev. Stat. 1985, ch. 110, par. 11—103; *Mitchell v. Mitchell* (1956), 10 Ill. App. 2d 437, 444, 135 N.E.2d 109.) Here, after plaintiffs urged entry of the order without bond, defendant recommended that a lien be imposed on Gold's payments from PC Brand. Defendant therefore waives its right to assert error on appeal, when doing so is inconsistent with its position in the circuit court proceeding. *Auton v. Logan Landfill, Inc.* (1985), 105 Ill. 2d 537, 543, 475 N.E.2d 817, citing *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 146, 357 N.E.2d 500.

For the foregoing reasons, the circuit court's grant of preliminary injunction is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.