THIRD DIVISION 

May 6, 1998

No. 1-97-1151

HUSEIN BECOVIC and ESE BECOVIC,

Plaintiff-Appellants,

v.

CITY OF CHICAGO, CITY OF CHICAGO COMMISSION ON HUMAN RELATIONS, CLARENCE N. WOOD, ROBERT HALL, and THE JOHN MARSHALL LAW SCHOOL FAIR HOUSING LEGAL CLINIC,

Defendant-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 96CH1155

Honorable

Lester D. Foreman,

Judge Presiding.

PRESIDING JUSTICE LEAVITT delivered the opinion of the court:

Claimant Robert Hall, who is legally blind, filed a complaint with the City of Chicago Commission on Human Relations (Commission) alleging respondents, Husein and Ese Becovic, discriminated against him on the basis of his disability by refusing to rent him an apartment, in violation of section 5-8-030 of the Chicago Fair Housing Ordinance (Ordinance) (Chicago Municipal Code § 5-8-030 (1994)).  The Commission found respondents discriminated against Hall on the basis of his disability and awarded him $2,500 in compensatory damages and assessed a civil penalty in the amount of $250.  Hall petitioned for attorney fees, and the Commission eventually awarded him $14,200 in attorney fees plus $430 in costs.  Respondents petitioned the circuit court of Cook County to review the award of attorney fees, and the circuit court affirmed.  Respondents appeal, contending:  (1) the award of damages in Hall's favor was 
de
 
minimis
, precluding an award of attorney fees; and (2) the amount of attorney fees awarded is against the manifest weight of the evidence.

The evidence before the Commission revealed the following.  Respondents are owners of property located at 6021 North Winthrop in Chicago, as well as various other rental properties throughout the Chicago area.  Hall is a legally blind individual who requires the use of a seeing-eye dog.  In March 1994, Hall responded to an advertisement in the newspaper for an apartment at 6021 North Winthrop.  Following a telephone conversation with Mrs. Becovic, Hall made arrangements to view the apartment on March 28, 1994.  Hall, his brother, and his brother's girlfriend arrived at the appointed time to view the apartment.  Hall's seeing-eye dog, Upton, was with him at the time.  According to Hall, shortly after entering the premises, he was confronted by Mrs. Becovic, who repeatedly stated "no pets!", "no pets!".  Hall informed Becovic that he was legally blind and that Upton was his seeing-eye dog.  Hall alleged he presented Becovic with an identification card to that effect.  Becovic responded that she maintained a "no pet" policy and that if one tenant was permitted to have a dog, all of her tenants would want dogs.  At that point, Hall and his companions left.

Hall filed the instant complaint on March 31, 1994, seeking $12,000 in damages.  On April 4, the Commission sent a copy of the complaint to respondents.  On April 8, an investigator for the Commission spoke with respondents and was informed they were willing to rent an apartment to Hall.  Respondents' answer to Hall's complaint contained a similar expression of willingness to rent to Hall.  Hall stated that at that point he had applied for an apartment elsewhere and did not want to rent from respondents.

In August 1994, the John Marshall Law School Fair Housing Legal Clinic (Clinic) filed an appearance of behalf of Hall.  Hall's prayer for damages was eventually raised to $35,300--$300 in out-of-pocket expenses, $5,000 for emotional distress, and $30,000 in punitive damages.  After a hearing on December 4, 1994, the Commission found Mrs. Becovic was not credible (she had maintained she was not aware Hall was blind) and awarded Hall $2,500 in compensatory damages.  The Commission also assessed a $250 civil penalty against respondents.

In petitioning for attorney fees, the Clinic listed six individuals who performed legal services for Hall.  This included work by two attorneys, three senior law students working under Supreme Court Rule 7-11, and one paralegal.  The Clinic requested $16,195 in legal fees and $430 in costs.  The hearing officer awarded fees of $14,200 for 193.3 hours of work, plus $430 in costs.  The Commission adopted the award of fees and costs in these amounts.  The circuit court affirmed this award, and respondents now appeal.

This court has previously held the right of a local commission to act to prevent housing discriminating springs from the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 
et
 
seq
.  (West 1996)).  See 
Atkins v. City of Chicago Comm'n on Human Rels. ex rel. Lawrence
, 281 Ill. App. 3d 1066, 1076-77, 667 N.E.2d 664 (1996).  Section 7-108A of the Act provides:

"A political subdivision, or two or more political subdivisions acting jointly, may create a local department or commission as it or they see fit to promote the purposes of this Act and to secure for all individuals within the jurisdiction of the political subdivision or subdivisions freedom from unlawful discrimination ***.  The provisions of any ordinance enacted by any municipality or county which prohibits broader or different categories of discrimination than are prohibited by this Act are not invalidated or affected by this Act."  775 ILCS 5/7-108A (West 1996).

The Act permits municipalities to pass anti-discrimination measures more sweeping in scope than Illinois law, and Chicago's fair housing provisions have been found to be expansive in scope.  
Jasniowski v. Rushing
, 287 Ill. App. 3d 655, 660-62, 678 N.E.2d 743 (1997).

In 
Atkins
, this court held attorney fees and costs were awardable in suits based on discrimination in real estate transactions, pursuant to section 5/8B-104 of the Act.  See 
Atkins
, 281 Ill. App. 3d at 1076-78.  Section 5/8B-104 provides:

"Upon finding a civil rights violation, a hearing officer may recommend and the Commission or any three-member panel thereof may provide for any relief or penalty identified in this Section, separately or in combination, by entering an order directing the respondent to:

***

(B) Actual Damages.   Pay actual damages, as reasonably determined by the Commission, for injury or loss suffered by the complainant.

(C) Civil Penalty.   Pay a civil penalty to vindicate the public interest:

(i) in an amount not exceeding $10,000 if the respondent has not been adjudged to have committed any prior civil rights violation under Article 3;

***

(D) Attorney Fees;  Costs.   Pay to the complainant all or a portion of the costs of maintaining the action, including reasonable attorneys fees and expert witness fees incurred in maintaining this action before the Department, the Commission and in any judicial review and judicial enforcement proceedings.

***

(G) Make Complainant Whole.   Take such action as may be necessary to make the individual complainant whole, including, but not limited to, awards of interest on the complainant's actual damages from the date of the civil rights violation."  775 ILCS 5/8B-104 (West 1996).

Respondents do not challenge the authority of the Commission to award attorney fees in this case.

Rather, they allege attorney fees are not recoverable "if the plaintiff's victory was purely technical or 
de
 
minimis
."  They rely on a variety of federal cases interpreting the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988 (1976)) and that section's requirement that a party be a "prevailing party" to recover attorney fees.  They conclude the award in Hall's favor was 
de
 
minimis
, thereby precluding an award of attorney fees under the federal authorities cited. 

Assuming 
arguendo
 that attorney fees are not awardable where the prevailing party's victory was "purely technical or 
de
 
minimis
" (see generally 
Farrar v. Hobby
, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed. 2d 494 (1992)),
 respondents would still not prevail on this issue.  A finding of a civil rights violation accompanied by a $2,500 award of compensatory damages and an assessment of a $250 civil penalty represents more than a "purely technical" victory and a "
de
 
minimis
" recovery.  See 
Hensley v. Eckerhart
, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed. 2d 40 (1983) (holding plaintiffs will be found to be "prevailing parties" for attorney fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit [they] sought in bringing suit"); 
Berlak v. Villa Scalabrini Home for the Aged
, 284 Ill. App. 3d 231, 236-37, 671 N.E.2d 768 (1996) (affirming a damages award of $3,700 trebled to $11,200, plus $85,000 in attorney fees and costs, under the Nursing Home Care Reform Act of 1979, holding plaintiff obtained more than "a mere moral victory" under the reasoning of 
Farrar
); 
Brewington v. Illinois Dep't of Corrections
, 161 Ill. App. 3d 54, 64-67, 513 N.E.2d 1056 (1987) (affirming an award of $12,669 in attorney fees where plaintiff obtained injunctive relief under the Human Rights Act but was denied any monetary recovery).  The cases cited by respondents involving nominal awards of $1 are patently inapposite.  

Respondents next challenge the amount of the attorney fees awarded to Hall and the Clinic.  The Commission awarded (and the circuit court approved) $14,200 in attorney fees for 193 hours of work done pursuing Hall's case.  Respondents assert this award of fees was exorbitant and unreasonable.  

We cannot say the amount of attorney fees awarded in this case represents an abuse of discretion.  See 
Raintree Health Care Ctr. v. Illinois Human Rights Comm'n
, 173 Ill. 2d 469, 494, 672 N.E.2d 1136 (1996) (trier of fact has discretion in determining reasonableness of an award of attorney fees under the Illinois Human Rights Act).  As the very size of the record on appeal indicates, considerable work was apparently done in pursuing this suit.  Depositions were taken, a conciliation conference and a pretrial hearing were held, and eventually a full hearing was conducted.  While respondents did make some attempts at accomodation and settlement, Mrs. Becovic persisted up until and throughout the hearing in denying she was ever aware Hall was blind, a story which the Commission found outright unbelievable.  The Commission painstakingly reviewed the records, time sheets, and affidavits submitted by the various individuals who worked on Hall's behalf, disallowed numerous entries as unreasonable or excessive, and reduced the requested award of attorney fees from $16,195 to $14,200 plus costs.  In reviewing the Commission's award, the circuit court commended the Commission for its "circumspect" review of the charges and challenged respondents' counsel to point to facts in the record upon which the court could reverse the Commission's thorough finding.  Counsel was unable to find fault with any specific factual findings made by the Commission.

Nor do we believe the circuit court's comments necessarily indicate the Commission abused its discretion in this case.  The circuit court's comments appear at most to be inconsistent.  While at one point the circuit judge stated he believed the amount of fees allegedly incurred and awarded was "unquestionably exorbitant," he nevertheless later found the record supported the award of fees.  Moreover, respondents rely too heavily upon the difference in hours spent by their counsel (21) and the hours spent by the Clinic (193).  Focusing solely on the number of hours billed ignores the fact that the vast majority of the Clinic's hours were billed by law students, whose billing rates ($50/hour) are assuredly much lower than those of practicing attorneys.  It is true, as respondents contend, an experienced attorney would have spent far less time in pursuing a case such as this; however, the billing rate for more experienced counsel would be correspondingly greater.  Thus, the net effect of utilizing law students in this case may very well have been a 
reduction
 in the cost of pursuing the case.  See 
Brewington
, 161 Ill. App. 3d at 65 (affirming an award of $12,669 in attorney fees which included 388 hours of senior law students' time, noting with approval the use of law students in providing complainants with competent legal services at a rate well below the standard market rate of fully licensed attorneys); 
Cameo Convalescent Center, Inc. v. Senn
, 738 F.2d 836, 846 (7th Cir. 1984) (approving an award of attorney fees for work done by law clerks in an action under 42 U.S.C. § 1988, noting "[s]uch a policy encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes"); 
Littlefield v. Mack
, 789 F.Supp. 914, 919 (N.D.Ill. 1992) (rejecting defendant's objection to an award of attorney fees which included 30 hours of work by a law student billed at a rate of $60/hour, noting the work might otherwise have been done by an attorney at much greater cost).

Respondents further argue the amount of fees should have been reduced by any amount spent pursuing punitive damages, since the Commission found such damages were unwarranted in the present case.  Respondents correctly note the general rule that if a plaintiff does not prevail on all of his claims, hours spent on unsuccessful claims may be excluded in calculating an award of attorney fees.  See 
Hensley
, 461 U.S. at 434-35; 
Ustrak v. Fairman
, 851 F.2d 983, 988 (7th Cir. 1988) ("Factually unrelated claims are treated as separate lawsuits, and therefore if the plaintiff loses on such a claim he is not to be reimbursed for the attorney's fees allocable to it"); 
Berlak
, 284 Ill. App. 3d at 238-39.  Nevertheless, this rule is not applicable here.  
Cf
. 
Berlak
, 284 Ill. App. 3d at 239 (refusing to reduce attorney fee award where plaintiff sought, but was not awarded, additional damages for pain, suffering, and disability, noting "the amount of monetary recovery is but a single factor to consider in determining the success of plaintiff's action").  Hall's claim for punitive damages clearly arose from the same set of facts upon which his housing discrimination claim was based.  Where a plaintiff's claims of relief involve a common core of facts or are based on related legal theories, such that much of his attorney's time is devoted generally to the litigation as a whole, a fee award should not be reduced simply because all requested relief was not obtained.  See 
Riverside v. Rivera
, 477 U.S. 561, 575-76, 106 S.Ct. 2686, 91 L.Ed. 2d 466 (1986); 
Hensley
, 461 U.S. at 434-35; 
Berlak
, 284 Ill. App. 3d at 238-39 (refusing to reduce award of $85,000 in attorney fees where plaintiff prevailed on only one count of her four-count complaint, since all counts involved common core of facts and similar legal theories);
 
Brewington
, 161 Ill. App. 3d at 64-67 (affirming an award of $12,669 in attorney fees where plaintiff obtained injunctive relief under the Human Rights Act but was denied any monetary recovery).

In conclusion, we also express our disagreement with respondents' contention, asserted repeatedly in the course of challenging the award of attorney fees in this case, to the effect that "[t]here was no public purpose served by this lawsuit."  A relatively small damages award neither makes a successful civil rights plaintiff's victory "
de
 
minimis
" nor justifies awarding attorney fees strictly in proportion to the amount of damages awarded.  Damage awards under the Human Rights Act and other similar civil rights provisions infrequently reflect the social benefits obtained in remedying discrimination and vindicating civil rights.  The availability of an award of attorney fees both encourages citizens to bring suit when their rights have been violated and provides incentives for attorneys to undertake representation in socially beneficial cases where the potential monetary recoveries are minimal.  See, 
e.g.
, 
Harris v. Manor Healthcare Corp.
, 111 Ill. 2d 350, 369-70, 489 N.E.2d 1374 (1986) (provisions of Nursing Home Care Reform Act permitting awards of treble damages and attorney fees encourage residents to seek redress for violations of their privacy, religious freedom, speech, and other constitutional rights, since "many violations of the Act will yield little in the way of actual monetary damages"); 
Berlak
, 284 Ill. App. 3d at 236-39 (affirming a damages award of $3,700 trebled to $11,200, plus $85,000 in attorney fees and costs, under the Nursing Home Care Reform Act of 1979); 
Grove v. Huffman
, 262 Ill. App. 3d 531, 539, 634 N.E.2d 1184 (1994) (noting one of the purposes of allowing attorney fees to be awarded under the Consumer Fraud Act is to encourage consumers to bring actions to vindicate their rights under the Act and that without such a provision it would be difficult for injured consumers to obtain counsel in light of the sums of money that are in dispute in most consumer fraud litigation);
 
Brewington
, 161 Ill. App. 3d at 65 (affirming an award of $12,669 in attorney fees where plaintiff obtained injunctive relief under the Human Rights Act but was denied any monetary recovery, reasoning that vindication of civil rights will generally not produce large pecuniary awards and attorney fee awards should not be reduced because the rights involved are non-pecuniary in nature); 
Riverside
, 477 U.S. at 574-78 (noting Congress enacted civil rights legislation "specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process" due to the fact "contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries").

For the foregoing reasons, the judgement of the circuit court of Cook County affirming the final administrative decision of the City of Chicago Commission on Human Relations is affirmed in its entirety.

AFFIRMED.

GORDON and CAHILL, JJ., concurring.