No. 2-08-1200          Filed: 3-4-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| McHENRY SAVINGS BANK, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 04--AR--923 |
| | ) | |
| AUTOWORKS OF WAUCONDA, INC., | ) | |
| ARTHUR BAUER, CARL BAUER, and | ) | |
| DAVID W. SCHWAGER, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | John D. Bolger, |
| (Eric Hoffman, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, McHenry Savings Bank, and defendant Autoworks of Wauconda, Inc., entered into a loan agreement under which plaintiff loaned Autoworks $400,000. As part of the agreement, Autoworks, through its president, defendant Carl Bauer, and its vice president, defendant David W. Schwager, executed a promissory note in favor of plaintiff, along with a floor plan loan agreement. Additionally, Carl Bauer, Schwager, defendant Arthur Bauer, and defendant-appellee Eric Hoffman all executed guaranties guaranteeing the terms of the promissory note. Autoworks eventually defaulted on the promissory note and plaintiff filed suit to collect the amount due. After an arbitration and a bench trial, the trial court entered judgment in favor of plaintiff and against all defendants in varying amounts. Plaintiff appeals, contending that the trial court misinterpreted the language of the

promissory note and Hoffman's guaranty, thereby erroneously reducing the attorney fees to which it was entitled. Plaintiff also contends that the attorney fees it sought were reasonable and that the trial court improperly reduced the fees on a summary basis rather than through an evaluation of each entry in plaintiff's fee petition. We affirm as modified in part and reverse in part.

The following factual summary is drawn from the record on appeal. On October 20, 2002, plaintiff and Autoworks entered into a loan agreement. Plaintiff agreed to loan Autoworks $400,000. Autoworks executed a promissory note and a floor plan loan agreement. The promissory note obligated Autoworks to repay the loan amount in a single balloon payment, including all principal and interest, due October 20, 2003. The promissory note also identified events of default, including Autoworks' failure to make any payment when due and Autoworks' failure to comply with any term of the floor plan loan agreement. The promissory note included a provision dealing with attorney fees:

"[Plaintiff] may hire or pay someone else to help collect this Note if [Autoworks] does not pay. [Autoworks] will pay [plaintiff] that amount. This includes, subject to any limits under applicable law, [plaintiff's] attorneys' fees and [plaintiff's] legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, [Autoworks] also will pay any court costs, in addition to all sums provided by law."

The promissory note also included a confession-of-judgment provision:

"[Autoworks] hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against [Autoworks] for the unpaid amount of

this Note as evidenced by an affidavit signed by an officer of [plaintiff] setting forth the amount then due, attorney's fees plus costs of suit, and to release all errors, and waive all rights of appeal."

In addition to the promissory note, the four individual defendants executed guaranties guaranteeing the terms of the promissory note. Each guaranty was identical and each was labeled a "Commercial Guaranty." Each guaranty defined the indebtedness to which it pertained:

> "**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes the Note, including (a) all principal, (b) all interest, (c) all late charges, (d) all loan fees and loan charges, (e) all collection costs and expenses relating to the Note or to any collateral for the Note. Collection costs and expenses include without limitation all of [plaintiff's] attorneys' fees." (Emphasis in original.)

Each guaranty also defined its duration:

> "This Guaranty will take effect when received by [plaintiff] without the necessity of any acceptance by [plaintiff], or any notice to Guarantor or to [Autoworks], and will continue in full force until all Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of any remaining Guarantors under this Guaranty."

Additionally, each guaranty specifically included an attorney fee provision:

> "**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of [plaintiff's] costs and expenses, including [plaintiff's] attorneys' fees and [plaintiff's] legal expenses, incurred in connection with the enforcement of this Guaranty. [Plaintiff] may hire or pay

someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include [plaintiff's] attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court." (Emphasis in original.)

Autoworks eventually defaulted on the promissory note, and, on September 30, 2004, plaintiff filed suit to recover the outstanding loan balance from Autoworks and the individual defendants. On January 5, 2005, a default judgment was entered against Autoworks. Hoffman filed affirmative defenses, which plaintiff answered, and, on August 19, 2005, an arbitration was held between plaintiff and the individual defendants. Schwager and Arthur Bauer did not attend the arbitration hearing; Hoffman and Carl Bauer did. The arbitrators found in favor of plaintiff and entered an arbitration award against all defendants jointly and severally. The amount of the award was $54,159.76, inclusive of attorney fees.

On September 19, 2005, Hoffman filed his notice rejecting the results of the arbitration. On September 21, 2005, plaintiff filed a motion to debar Schwager and Arthur Bauer from rejecting the arbitration award, because they had not attended the arbitration. On October 5, 2005, the trial court debarred Schwager and Arthur Bauer from rejecting the arbitration award and entered final judgment against them jointly and severally in the amount of $54,159.76. The case proceeded in the trial court against Carl Bauer and Hoffman.

After the arbitration hearing, plaintiff filed a motion seeking partial summary judgment. Later, plaintiff was given leave to file a memorandum in support of its partial summary judgment motion, and the trial court set a briefing schedule. As plaintiff proceeded, however, it determined that it would not pursue a motion for summary judgment.

On October 26, 2006, plaintiff issued a citation to discover assets against Arthur Bauer. The citation was dismissed following a hearing. Plaintiff also issued a citation to discover assets against Schwager, but Schwager failed to appear, resulting in the issuance of a rule to show cause. Plaintiff pursued collection against Arthur Bauer and Schwager, and both filed for bankruptcy. Plaintiff caused the judgment to be registered in Wisconsin, and it undertook title searches and obtained an asset turnover order.

Eventually, the matter against Hoffman and Carl Bauer was set for bench trial. On March 25, 2007, the bench trial occurred. Plaintiff called four witnesses and submitted 28 exhibits into evidence. At the conclusion of the trial, plaintiff filed a verified petition for attorney fees, seeking a total of $37,445.20. Plaintiff's fee petition detailed the services performed and time spent by the seven different attorneys who represented plaintiff in its efforts to collect the money due under the promissory note. Plaintiff averred that the time spent by the attorneys totaled 198.5 hours. The billing rates of the attorneys ranged from $300 per hour to $125 per hour, averaging $195 per hour. The fee petition included time spent preparing for and conducting the arbitration proceeding, time spent in trial preparation and in trial, and time spent attempting to collect the judgment entered against Schwager and Arthur Bauer. In addition, plaintiff included time spent in the bankruptcy proceedings filed by Arthur Bauer and Schwager (which were dismissed), in the citation proceedings,

and in registering the judgment in Wisconsin. Hoffman filed a response to the fee petition but did not verify it or contest any specific entry contained in the petition.

On July 31, 2008, the trial court ruled. The trial court found in favor of plaintiff and against Hoffman and Carl Bauer on counts III and IV of the verified complaint. The trial court rejected Hoffman's affirmative defenses, first concluding that plaintiff did not, as a matter of law, have a fiduciary duty toward defendants. The trial court also rejected Hoffman's affirmative defense of estoppel, finding that plaintiff conducted inventory checks of Autoworks consistently with the floor plan loan agreement. Finally, the trial court determined that plaintiff had properly liquidated the collateral in a commercially reasonable fashion. The court entered judgment on the guaranties against Hoffman and Carl Bauer jointly and severally in the amount of $79,653.93.

Turning to the fee petition, although plaintiff had sought $37,445 in fees, the trial court awarded plaintiff only $13,500. In making this reduction, the trial court held:

"14. The Plaintiff's attorneys have filed a petition for Attorney[] Fees. The Commercial Guaranty provides that the guarantor will pay the Plaintiff's Attorney[] Fees in enforcing the Guaranty. Illinois Courts have held that a Trial Court should consider a variety of factors in determining a reasonable attorney fee including 'the skill and standing of the attorney employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community and whether [there] is a reasonable connection between fees charged and the litigation.' Robinson v. Calcagno, 333 Ill. App. 3d 1022 (2002). In the instant case the Petitioner is claiming to have expended in excess of 198 hours in advising and representing the Plaintiff in this matter. This case is based on a promissory note and personal

guarantees signed by four (4) individuals. The execution of the note and the guarantees were not in contest and the only defenses raised by the Defendants at this trial were the affirmative defenses previously discussed in this Opinion. According to the Petition the Plaintiff's attorney expended approximately 55 hours through the Arbitration hearing held on August 19, 2005. Substantially all of these hours were billed by Attorney Paul Orenic at $175.00 per hour for a total of $9,625.00. The Court finds that this time was reasonably expended by the plaintiff through the Arbitration hearing on August 19, 2005.

15. Thereafter, the Plaintiff's attorneys have billed more than 143 hours to obtain this Judgment. The case of [Healy v. Tierney, 137 Ill. App. 3d 406 (1985),] held that reasonable attorney[] fees should not be based solely on the multiplication of the hourly rate by the time claimed to have been spent. Compensation should be awarded only for work which was reasonably required for the proper performance of the services involved. Some of the time billed after the Arbitration hearing was not necessary. For example, the Arbitration Award was in favor of the Plaintiff and against all four (4) individual Defendants. Only one, Eric Hoffman, rejected the Arbitration Award. Judgments against the remaining Defendants, Carl and Arthur Bauer and David Schwager[,] should have been entered at the September 21, 2005[,] hearing for failure to reject the Arbitration Award. Plaintiff, however, continued that hearing and filed a Motion to Debar these Defendants from rejecting the award and attended a Court hearing on October 5, 2005. This was unnecessary in order to obtain a Judgment against these Defendants; and, in fact, no judgment was obtained against Carl Bauer even though he did not reject the Arbitration Award. Further, the Plaintiff billed more than seven (7) hours to prepare a Motion for a Summary Judgment which was never filed.

16. The Court's review of the time billed after the Arbitration hearing shows that the vast majority of this time from Arbitration Award through 2007 (about 80 hours) was billed to collect judgments already entered and were not directed at the preparation or trial of the cause of action against Eric Hoffman.

17. The Plaintiff's Petition for Fees show[s] that forty-six (46) hours were billed in 2008 to prepare for the trial and in addition two lawyers billed six (6) hours each to try the case for a total of fifty-eight (58) hours. Since all of the discovery was completed prior to the Arbitration hearing this time seems excessive to try a case that lasted an afternoon and did not involve any complex issues of evidence or law and which had already been tried to an Arbitration panel. The Court is permitted to use its own knowledge and experience to assess the time required to complete particular activities. Cretton v. Protestant Memorial Medical Center[, Inc.], [371] Ill. App. 3d [841] (2007). Based on the Court's own knowledge and experience of the time necessary to prepare and try a case of this nature, the Court will allow thirty (30) hours of time to prepare and try this case at $250.00 per hour for a total of $7,500. The Court will allow a fee of $6,000 to prepare and try the case before the Arbitration panel. Accordingly, [the] Court allows a total attorney[] fee of $13,500 for the Plaintiff."

Plaintiff and Hoffman filed motions to reconsider. Hoffman argued that the $79,654 judgment included over $26,000 in attorney fees and requested the trial court to recalculate the amount due under the promissory note. Plaintiff argued that it was entitled to a greater award of attorney fees. The trial court denied plaintiff's motion to reconsider and granted Hoffman's. The trial court then entered judgment on the note in the amount of $52,976.02 and awarded attorney fees in the amount

of $13,500, for a total judgment against Hoffman of $66,476.02 plus court costs. Plaintiff timely appeals.

On appeal, plaintiff contends that the trial court failed to properly construe the commercial guaranty executed by Hoffman and that a proper reading of the guaranty would have resulted in the trial court including all of the attorney fees expended in collecting the indebtedness from all defendants. Plaintiff also contends that the attorney fees submitted were reasonable and that the trial court erred in reducing the amount of fees awarded, because it did not evaluate each entry included in the fee petition but reduced the amount of attorney fees on a summary and arbitrary basis. We consider each contention in turn.

As a preliminary matter, however, we note that Hoffman did not submit an appellee's brief. Nonetheless, we will decide the merits of this appeal under the principles set forth in First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976) (where the record is simple and the claimed errors are such that the reviewing court can decide them without the assistance of an appellee's brief, the court should address the merits of the appeal).

Plaintiff's initial contention on appeal concerns the proper interpretation of the guaranty executed by Hoffman. Plaintiff argues that the guaranty required Hoffman to pay all costs and expenses and all attorney fees incurred as part of the indebtedness that he guaranteed. Plaintiff also contends that the attorney fees incurred in attempting to collect the judgment against Schwager and Arthur Bauer were improperly reduced, not because they were unreasonable, but because, under the trial court's erroneous reading of the Hoffman guaranty, they were not chargeable to Hoffman.

A guaranty is a contract and is thus interpreted according to the principles that govern the interpretation of contracts in general. T.C.T. Building Partnership v. Tandy Corp., 323 Ill. App. 3d

114, 118 (2001). Accordingly, we begin by reviewing the principles of interpreting contractual language. The primary goal of contract interpretation is to give effect to the parties' intent in entering the contract. McRaith v. BDO Seidman, LLP, 391 Ill App. 3d 565, 577 (2009). This intent is discerned by considering the contract as a whole and applying the plain and ordinary meaning to unambiguous terms. McRaith, 391 Ill. App. 3d at 577. Thus, an unambiguous contract is enforced as it is written. Bank of America National Trust & Savings Ass'n v. Schulson, 305 Ill. App. 3d 941, 945 (1999). We further presume that each contractual provision was inserted deliberately and for a purpose consistent with the parties' intent. Schulson, 305 Ill. App. 3d at 946. If possible we must interpret a contract in a manner that gives effect to all of the contract's provisions. Schulson, 305 Ill. App. 3d at 946.

Where the meaning of the contract is at issue, we must first determine whether the contract is ambiguous, which is a question of law. Schulson, 305 Ill. App. 3d at 945. An ambiguity exists if a contractual provision is susceptible to more than one reasonable interpretation. Schulson, 305 Ill. App. 3d at 945-46. Any doubts arising from a guaranty's language are resolved in favor of the guarantor and against the party receiving the benefit of the guaranty. Schulson, 305 Ill. App. 3d at 946. With these principles in mind, we turn to the language of the guaranty executed by Hoffman.

The promissory note that defendants guaranteed provided, in both the "Attorneys' Fees; Expenses" and the "Confession of Judgment" paragraphs, that plaintiff was entitled to collect attorney fees and expenses incurred in collecting the money due on the note. Each individual defendant's guaranty also provided, in the "Indebtedness Guaranteed" paragraph, that plaintiff was entitled to recover attorney fees, because the indebtedness that each individual defendant was guaranteeing included "all collection costs and expenses relating to the Note." The guaranty further specified that

"[c]ollection costs and expenses include[d,] without limitation[,] all of [plaintiff's] attorneys' fees." The plain language of these provisions indicates that plaintiff's attorney fees incurred in collecting on the note are added to the "Indebtedness Guaranteed" by the guaranty. The guaranty further provided that plaintiff could receive its "attorneys' fees and *** legal expenses[] incurred in connection with the enforcement of th[e] [g]uaranty." We find the language employed by the note and the guaranty to be unambiguous and to fully entitle plaintiff to recover its attorney fees incurred in all proceedings relating to the note and the guaranty.

The trial court held that "[t]he [c]ommercial [g]uaranty provides that the guarantor will pay the [p]laintiff's [a]ttorney[] [f]ees in enforcing the [g]uaranty." Apparently, the trial court viewed the "Attorneys' Fees; Expenses" provision in the guaranty and failed to identify that the "Indebtedness Guaranteed" provision of the guaranty provided that any attorney fees incurred in collecting on the note were part of the indebtedness for which the individual defendants, as guarantors, were liable. To the extent that the trial court ignored this language, its decision was in error. Thus, as a starting point, under the note and the guaranty, plaintiff was entitled to recover its attorney fees incurred in collecting on the note and enforcing the guaranty.

Plaintiff argues that all of its attorney fees claimed in its petition were connected to the note. Plaintiff argues that this also included postjudgment fees incurred to collect the unpaid indebtedness from Schwager and Arthur Bauer, which included unpaid principal, interest, late fees, and charges, as well as attorney fees and expenses. We agree. We see no language limiting attorney fees to those incurred solely in attempting to enforce an individual guaranty. Rather, any attorney fees, even those incurred in enforcing the other guaranties, would be connected to the collection of the note. As a result, the fees incurred in attempting to collect on the guaranty of one of the individual defendants

-11-

would become part of the "Indebtedness Guaranteed" by the other individual defendants' individual guaranties. Thus, the terms of the guaranties contemplated that plaintiff would be able to recover from any and all of the individual guarantors all attorney fees incurred in collecting the sum due under the note. We therefore reject the trial court's implicit starting point that plaintiff could recover only the attorney fees expended in enforcing Hoffman's guaranty. Instead, all of the attorney fees are recoverable from Hoffman, even those incurred in pursuing Schwager, Arthur Bauer, and Carl Bauer. We next consider the propriety of the trial court's determination of the amount of fees to which plaintiff was entitled.

Whether and in what amount a trial court will award attorney fees is a matter committed to the trial court's sound discretion, and we review the fee award for an abuse of discretion. Mountbatten Surety Co. v. Szabo Contracting, Inc., 349 Ill. App. 3d 857, 873 (2004). The award will consist only of those fees that are reasonable, consisting of reasonable charges for reasonable services. Mountbatten Surety, 349 Ill. App. 3d at 873. To help the trial court in assessing the reasonableness of the fees sought, the party seeking fees must provide sufficient information, including detailed time records maintained throughout the proceeding. Richardson v. Haddon, 375 Ill. App. 3d 312, 314 (2007). The trial court should scrutinize these records for their reasonableness in the context of the case. Richardson, 375 Ill. App. 3d at 314.

When making its reasonableness assessment, the trial court may consider a number of factors, including the nature of the case, the novelty and difficulty of the case, the skill and standing of the attorneys, the degree of responsibility required, the usual and customary charges in the community for similar work, and the connection between the case and the fees charged. Richardson, 375 Ill. App. 3d at 314-15. The trial court may and should rely on its own knowledge and experience when

determining the reasonableness of the fees sought. <u>Richardson</u>, 375 Ill. App. 3d at 315. When a trial court reduces the amount of fees requested in a fee petition, it should include in its ruling the reasons supporting each reduction. <u>Richardson</u>, 375 Ill. App. 3d at 315. With these principles in mind, we turn to plaintiff's particular contentions.

Plaintiff argues that the attorney fees it sought were reasonable. Plaintiff initially contends that it should have received credit for the fees/hours expended after the arbitration hearing. Specifically, the trial court disallowed the time spent pursuing a judgment against Schwager, Carl Bauer, and Arthur Bauer, holding:

"For example, the Arbitration Award was in favor of the Plaintiff and against all four (4) individual Defendants. Only one, Eric Hoffman, rejected the Arbitration Award. Judgments against the remaining Defendants, Carl and Arthur Bauer and David Schwager[,] should have been entered at the September 21, 2005[,] hearing for failure to reject the Arbitration Award. Plaintiff, however, continued that hearing and filed a Motion to Debar these Defendants from rejecting the award and attended a Court hearing on October 5, 2005. This was unnecessary in order to obtain a Judgment against these Defendants; and, in fact, no judgment was obtained against Carl Bauer even though he did not reject the Arbitration Award."

Plaintiff contends that this holding was erroneous. We agree.

Supreme Court Rule 93 (166 Ill. 2d R. 93) provides that, where there is more than a single defendant, one defendant's rejection of an arbitration award "shall be sufficient to enable all parties except a party who has been debarred from rejecting the award to proceed to trial on all issues." A party who did not attend the arbitration may not take advantage of the rejection made by an attending party. 145 Ill. 2d R. 91; 166 Ill. 2d R. 93. Here, only Hoffman and Carl Bauer attended the

arbitration hearing. Thus, under Rule 93, Carl Bauer had the right to proceed to trial as a result of Hoffman's rejection, and plaintiff was required to prepare for trial against Hoffman and Carl Bauer. The trial court's holding disallowing time spent pursuing a judgment against Carl Bauer was erroneous. The court, however, never attributed a fee amount to that time.

The thrust of the trial court's decision quoted above is that plaintiff's motion to debar Schwager and Arthur Bauer was unnecessary, because they did not attend the arbitration hearing and thereby waived the right to reject the arbitration award. 145 Ill. 2d R. 91. We agree. Under Rule 92 (155 Ill. 2d R. 92), at any time after the rejection period has elapsed, a party may move the trial court to enter judgment on the award. The trial court correctly held that judgment should have been entered against Schwager and Arthur Bauer at the hearing held on September 21, 2005. The trial court thus properly reduced the number of recoverable hours by the amount of time it took plaintiff to prepare the motion to debar Schwager and Arthur Bauer from rejecting the arbitration award and to attend the hearing at which the motion was presented. The time spent drafting the motion to debar was 0.50 hours; we cannot differentiate the attorney's time spent at the unnecessary hearing from the time spent on other tasks on the date of the hearing. However, other fee petition entries for attending court generally run in the vicinity of 1.0 hours. Accordingly, we attribute 1.0 hours to attending the unnecessary hearing. We find that the trial court properly struck the time spent preparing the motion to debar and appearing at the court hearing on the motion, resulting in a reduction of 1.50 hours, for a fee reduction of $262.50.

Next, plaintiff challenges that trial court's determination that 58 hours to prepare and try the case was too much. The trial court held:

"[F]orty-six (46) hours were billed in 2008 to prepare for the trial and in addition two lawyers billed six (6) hours each to try the case for a total of fifty-eight (58) hours. Since all of the discovery was completed prior to the Arbitration hearing this time seems excessive to try a case that lasted an afternoon and did not involve any complex issues of evidence or law and which had already been tried to an arbitration panel. The Court is permitted to use its own knowledge and experience to assess the time required to complete particular activities. [Citation.] Based on the Court's own knowledge and experience of the time necessary to prepare and try a case of this nature, the Court will allow thirty (30) hours of time to prepare and try this case."

Plaintiff argues that, rather than being a simple case, it was complex because it involved a floor plan loan. As proof of the case's complexity, plaintiff notes that at trial it presented 28 exhibits to establish its case. Plaintiff further notes that Hoffman filed "complicated, fact intensive affirmative defenses," including breach of fiduciary duty, estoppel, and failure to mitigate, that required extensive preparation for trial.

While we are sensitive to plaintiff's contention, the trial court was nevertheless fully justified in resorting to its own knowledge and experience of the time necessary to prepare and try a case like this one. See, e.g., Richardson, 375 Ill. App. 3d at 315. Further, the trial court noted that the actual trial in this matter occupied a single afternoon, and it characterized the case as not involving any complex issues of law or evidence. In contrast, plaintiff asserts only that the subject matter of the case, a floor plan loan to a car dealership, was complicated because such a loan requires the lender to conduct inspections of the car dealership to determine whether any of the assets securing the loan have been sold out of trust. Plaintiff also suggests that the number of exhibits presented at trial

provides a measure of the complexity. We disagree with plaintiff that the number of exhibits represents the complexity of the case. We have examined the exhibits and note that the bulk of the exhibits are the regular inspection reports that accompanied the floor plan loan. They show, as the trial court determined, that plaintiff conducted regular inspections and negated Hoffman's affirmative defense of estoppel. Further, while the mechanics of the loan may be complicated by the necessity of conducting inspections to verify the existence of the assets securing the loan, our review of the exhibits shows that the evidence appears to have been fairly straightforward. We do not believe that the trial court's characterization of the complexity of the case amounted to an abuse of discretion where plaintiff has been unable to demonstrate to this court that enforcing a guaranty of a loan is, in itself, a complex matter. Thus, because the trial court has offered a reasonable explanation of its decision to reduce the hours and the fees for trial preparation, we find no abuse of discretion associated with this reduction. Accordingly, we hold that the trial court appropriately reduced the number of hours by 28. We note that the trial court utilized an hourly rate of $250 in determining the fee it would allow for the 30-hour trial preparation. This rate appears to be a rough average of the rates charged by the two attorneys who engaged in the trial preparation. We find this to be a reasonable assumption and hold that the trial court's methodology was not an abuse of discretion. Accordingly, we hold that the trial court properly reduced the fees associated with trial preparation from the claimed $11,475 to $7,500, a reduction of $3,975.

Plaintiff argues that, where evidence is uncontradicted and is not inherently unbelievable, a finding contrary to the evidence cannot stand, citing Gold v. Ziff Communications, Co., 196 Ill. App. 3d 425, 433 (1989). Plaintiff notes that its fee petition was verified, while Hoffman's response to the fee petition was not verified and Hoffman did not present evidence or meritorious argument

contradicting plaintiff's fee petition. Based on this, plaintiff concludes that the trial court should have awarded the fees claimed in the fee petition. We disagree.

Gold is inapposite. In Gold, the defendant argued that the plaintiffs had failed to prove an element of their case. Gold, 196 Ill. App. 3d at 432-33. The appellate court noted that the plaintiffs put on their evidence and that the defendant was given the opportunity to cross-examine the plaintiffs' witnesses and to put on evidence of its own, but the defendant did not provide any evidence to contradict the plaintiffs' evidence. Gold, 196 Ill. App. 3d at 433. The court held that "[d]isbelief of oral testimony cannot support an affirmative finding that the reverse of that testimony is true, that is, it cannot supply a want of proof." Gold, 196 Ill. App. 3d at 433. Here, by contrast, the issue is not whether plaintiff failed to supply essential evidence such that the trial court could have found a want of proof; rather, the issue is whether disbelief of the evidence presented could allow the court to reach the result it reached. We hold that it could. We note that plaintiff's argument, if accepted, would strip the trial court of its discretion to award attorney fees and to use its own knowledge and experience in making an award if a petitioner filed a verified fee petition. If a verified fee petition were presented, according to plaintiff's argument, then the trial court would be nothing more than a rubber stamp, required to approve the fee petition just as it was presented, unless the respondent were able to expressly contradict portions of the fee petition. Plaintiff has not provided any authority for such a result and we do not believe that such a result may stand.

Plaintiff also argues that paid attorney fees are presumed to be at the market rate and reasonable, citing Truserve Corp. v. Flegles, Inc., 419 F.3d 584, 593 (7th Cir. 2005), and Kallman v. Radioshack Corp., 315 F.3d 731, 742 (7th Cir. 2002). Plaintiff argues that it also presented evidence that it had paid or agreed to pay all of the fees sought. We note, however, that the question

of whether the attorney fees were excessive is a matter of opinion, and the opinion that matters is the trial court's. Truserve, 419 F.3d at 593. The federal courts also use an abuse-of-discretion standard of review for awards of attorney fees. Thus, while paid fees might raise a presumption that the fees were commercially reasonable, this presumption is not conclusive; the trial court remains free to use its own knowledge and experience to evaluate the fees sought. See Richardson, 375 Ill. App. 3d at 315. Here, the trial court set forth a justification for reducing the fees, noting that the trial did not involve complex legal or evidentiary questions and took a single afternoon to present and that the case had already been developed and presented to an arbitration panel. Plaintiff has failed to demonstrate how this justification was arbitrary, was made without conscientious judgment, exceeded the bounds of reason, or ignored recognized principles of law. See In re Marriage of Pond, 379 Ill. App. 3d 982, 987 (2008) (an abuse of discretion occurs when a court "acts arbitrarily, acts without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law"). Based on these considerations, we reject plaintiff's contention.

Plaintiff next challenges the trial court's implicit determination that the fees generated in plaintiff's attempt to collect the judgment against Schwager and Arthur Bauer were unreasonable. The court held that its "review of the time billed after the Arbitration hearing shows that the vast majority of this time from Arbitration Award through 2007 (about 80 hours) was billed to collect judgments already entered and were not directed at the preparation or trial of the cause of action against Eric Hoffman."

The court allowed fees of $6,000 for the arbitration hearing and $7,500 for the preparation and conduct of the trial. Thus, the court, while not expressly stating so, implicitly reduced the fees by the time (about 80 hours) spent in efforts to collect the judgment. Our de novo review above of the

terms of the note and the guaranties led us to hold that plaintiff was entitled to recoup these fees under the plain and unambiguous language of the note and the guaranties. The trial court's denial of the totality of the fees generated in collection efforts contravenes the terms of the note and the guaranties and constitutes an abuse of discretion. Our review of the fees incurred in trying to collect the judgment against Schwager and Arthur Bauer leads us to conclude that these fees were reasonable. Accordingly, we reverse this portion of the trial court's fee award and restore those fees to the fee award.

Plaintiff also contends that the trial court abused its discretion in disallowing fees for time spent on the summary judgment motion it contemplated but did not pursue. We agree with plaintiff. While fees may be excluded from an award if they were generated pursuing unsuccessful claims, when a party's claims for relief involve a common core of facts or are based on related legal theories, so that much of the attorney time is devoted generally to the proceeding as a whole, the fee award should not be reduced simply because not all of the relief requested was obtained. Becovic v. City of Chicago, 296 Ill. App. 3d 236, 242 (1998). Here, the proceedings were divided into three parts: the arbitration, the collection efforts against Schwager and Arthur Bauer, and the efforts in the trial court to obtain a judgment against Hoffman and Carl Bauer. The contemplated motion for summary judgment arose from the same facts and legal theories that plaintiff pursued against Hoffman and Carl Bauer. Had there been grounds to pursue the motion, it could have significantly decreased the time spent on the prosecution of the claims against Hoffman and Carl Bauer. But to make that reduction in time, plaintiff needed to explore the viability of the summary judgment motion. The trial court did not offer a clear explanation as to why it believed the time spent exploring the viability of the summary judgment motion was unreasonable. In view of the fact that the use of summary judgment

is favored as a means to dispose of claims (see, e.g., Turner v. City of Chicago, 91 Ill. App. 3d 931, 934 (1980)), we hold that the trial court abused its discretion in disallowing the fees engendered in exploring a possible motion for summary judgment, and we restore these fees to the trial court's award.

Next, plaintiff again challenges the trial court's decision to reduce the hours and fees allowed for conducting and preparing for the trial. This time, plaintiff argues that the trial court erred by comparing the arbitration to the trial, because arbitration is a streamlined process dispensing with many of the formalities of a trial. On the other hand, plaintiff notes that at trial its attorneys had to observe those formalities, prepare 28 exhibits, and prepare for a vigorous presentation of Hoffman's affirmative defenses along with any case Carl Bauer might present. Plaintiff concludes: "By reducing the trial based attorneys' fees sought by [plaintiff] and eliminating necessary trial preparation work from the fee award, the trial court abused its discretion." In light of the trial court's explanation of its reduction of the fee, relating it to its own knowledge and experience (see Richardson, 375 Ill. App. 3d at 315), and its observation that the matter did not present complex issues of evidence or law, we reiterate that we cannot discern that the trial court's reduction was arbitrary or without conscientious judgment or that it exceeded the bounds of reason and ignored recognized principles of law. See Marriage of Pond, 379 Ill. App. 3d at 987 (an abuse of discretion occurs when a court "acts arbitrarily, acts without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law"). Accordingly we reject plaintiff's contention.

We note that paragraph 14 of the trial court's order conflicts with paragraph 17. In paragraph 14, the trial court held that the time preparing and presenting the case for arbitration "was reasonably

expended by the [p]laintiff." The total fees corresponding to the preparation and presentation of the arbitration case were $9,625. In paragraph 17, however, the trial court reduced the fees for preparing and presenting this case at trial. The trial court then stated, with no explanation or rationale, that it would "allow a fee of $6,000 to prepare and try the case before the Arbitration panel." If the time and fees of $9,625 were reasonable in preparing and presenting the arbitration case, then the reduction to $6,000 is clearly arbitrary, inexplicable, and unreasonable, especially where the trial court provided no insight as to why the "reasonable" fee was reduced. Accordingly, we reverse the trial court's judgment on that point and restore $3,625 to the fees attributable to the preparation and presentation of the arbitration case.

Next, plaintiff argues that the trial court improperly reduced the fees without considering each individual itemization of the charges and services performed. Plaintiff argues that, as a result, the whole of the trial court's fee award must be reversed. In light of our discussion above, we have resolved plaintiff's specific contentions regarding its claims of error, and we need not further address this contention.

To sum up, we have carefully reviewed the language of the note and guaranties to discern and effect the parties' intent in executing these contracts. Our review determined that, under the note and the guaranties, plaintiff was eligible to recover from each individual defendant its attorney fees not only for enforcing the guaranties, but also for its efforts to collect under the note. The individual defendants all agreed that the indebtedness guaranteed by the guaranties included attorney fees incurred in collecting on the note. Our review of the trial court's order showed that the trial court ignored the provisions in the note and guaranties affording this right to plaintiff. Additionally, we did not accept the trial court's arbitrary reductions in the award of attorney fees. We did, however,

conclude that the trial court's reduction of $262.50 due to the unnecessary motion to debar and its reduction of $3,975 for conducting and preparing for the trial did not constitute abuses of discretion, and we affirmed these reductions. Plaintiff sought a total fee award of $37,445. We carefully reviewed the trial court's determination of the award and found that it properly made and supported a reduction of $4,237.50. Accordingly, we affirm in part and reverse in part the trial court's fee award, modifying it to reflect an award of $33,207.50.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed as modified in part and reversed in part.

Affirmed as modified in part and reversed in part.

HUDSON, J., concurs.

JUSTICE SCHOSTOK, concurring in part and dissenting in part:

I dissent from the majority's decision that the trial court abused its discretion in determining that the plaintiff was not entitled to its attorney fees for work done on a summary judgment motion it contemplated but never pursued. As the majority sets forth, a trial court abuses its discretion when it "acts arbitrarily, acts without conscientious judgment, or, in view of all the circumstances, exceeds the bounds of reason and ignores recognized principles of law." Pond, 379 Ill. App. 3d at 987. Here, the trial court heard the arguments of the parties and made detailed findings. There is no evidence in the record that its decision as to this issue was made arbitrarily or without conscientious judgment. Second, the trial court's decision did not contravene any recognized principles of law. In support of its decision, the majority points to Becovic, 296 Ill. App. 3d at 242. However, that decision dealt with work that attorneys did on matters that were actually litigated; Becovic did not address attorneys' work on matters that were merely "contemplated." See Becovic, 296 Ill. App. 3d at 242.

Furthermore, it cannot be said that the trial court's refusal to award fees for work on matters that were contemplated but never actually pursued "exceed[ed] the bounds of reason." See <u>Pond</u>, 379 Ill. App. 3d at 987.

In all other respects, I concur with the majority's decision.